# WINDHAM COUNTY,

## FEBRUARY TERM, 1872.

### [ CONTINUED FROM ANTE PAGE 514.]

---

JOSEPH RICHARDSON, GEORGE M. BARNARD, JAMES M. BARNARD,
CHARLES LARKIN, JACOB W. PIERCE, N. VANTIN, ASA HILL,
WILLIAM MUNROE, CHARLES DAVIS, N. F. CUNNINGHAM, S. E.
SEWALL, AND LYMAN NICHOLS *v.* THE VERMONT AND MASSA-
CHUSETTS RAILROAD COMPANY.

## [ IN CHANCERY.]

*Corporation. Railroad. Chancery. Annual Meeting of Stock-
holders. Interest. Vt. & Mass. R. R. Jurisdiction.*

A railroad corporation has authority to stipulate that each stockholder shall be entitled
to interest on sums paid on stock subscriptions while its road is in process of construc-
tion, till it is completed and goes into operation, payable whenever the surplus earn-
ings shall enable it properly to do so.

This arrangement for the payment of "interest dividends" is equitable and just; and
such payment, made only out of the surplus earnings not needed for the payment of
debts of the corporation or for the prosecution of its business, does not interfere with
the rights of creditors nor contravene any principle of public policy.

The vote to pay such interest was passed at an annual meeting of the stockholders, the
subject not being specially named in the notice calling the meeting. *Held*, without de-
ciding whether the corporation had the right to pass such vote, that the defect, if any,
could be cured by subsequent ratification.

The subsequent action of the corporation in paying the interest to stockholders in pur-
suance of said vote, and the corporation and directors subsequently voting to issue
certificates for the payment of said interest, and the action of the treasurer in issuing
such certificates, constitute a ratification of such vote.

One of the by-laws of the defendant corporation provides that "at the annual meetings
any matter may be acted upon within the power of the corporation." *Held* therefore
that the proceedings of the corporation, terminating in the issuing of the interest certi-
ficates, created an obligation upon the corporation to pay according to the terms and
conditions of such certificates.

Notwithstanding the stock for which $75 and $50 per share were paid was to be of equal
rank and value as the other stock for which $100 per share was paid, yet in the mat-
ter of this interest such stockholders should be limited to "*interest on all amounts paid*

*by them,*" according to the language of the original vote, and are not entitled to interest upon the nominal value of $100 per share, and the certificates should be reduced accordingly.

There is not such a clear, complete and adequate remedy at law in this case as to require or justify the denial of relief in a court of equity on the ground that the remedy must be at law.

The ability of the corporation to pay, which constitutes the contingency upon which these certificates are payable, must be ascertained in reference to the nature of the subject and the relative condition of the parties, and their duty to creditors having a paramount right.

The mere fact of the corporation having funds in its treasury sufficient in amount to pay the orators, would not be sufficient to show the ability of the corporation contemplated in the vote and certificates. That ability must consist of a fund adequate not only for the payment of the claims of the orators, but for the payment of all other stockholders having like claims, and must be a surplus fund over and above what is requisite for the payment of the current expenses of the business, for discharging its duties to creditors, and over and above what reasonable prudence would require to be kept in the treasury to meet the contingencies of its business.

The orators' claims are in the nature of claims upon a particular fund upon which others have an equal claim, and to which another class of claimants may have a paramount right. The determination of the orators' rights might involve an accounting to ascertain the existence and extent of the claims of others standing in like condition with the orators, &c., more appropriate for a court of chancery than for a jury in a court of law.

The defendant corporation exists and is operating its railroad under and by virtue of acts of the legislature of Vermont and Massachusetts respectively. Its railroad is located wholly within the two states, being partly in each. Therefore the courts of Vermont as well as the courts of Massachusetts have jurisdiction of this corporation.

BILL IN CHANCERY. The bill charged that at the first meeting of the Vermont and Massachusetts Railroad Company, held November 21, 1844, in Boston, before the shares were fully taken, and in order to induce persons to become shareholders and members of said company, it was duly voted " that all subscribers" ( for stock ) " be allowed interest on all sums paid by them up to the time when the road shall be completed and put in operation." That in pursuance of said vote, interest was allowed to stockholders and paid until October 1, 1848 ; that the railroad of said company remained unfinished for six and a half months afterward, viz : until the 15th day of April, 1849 ; that the orators were shareholders in said company during said six and one half months, or the representatives of persons then shareholders therein, and as such became entitled to interest from said company upon their shares.

That the orators were severally credited, on the books of the said company, for the several sums found due to them respectively for interest accrued up to April 15, 1849, on shares held or rep-

resented by them, the assessments of which had been, previously to October 1, 1848, paid in full; that by reason of the pecuniary inability of the defendant corporation, these interest dues were not provided for in any manner until the annual meeting of said corporation, holden February 9th, 1853, when the vote was passed by said corporation, a copy of which is annexed marked A; that in pursuance of the said vote, and of the vote of directors passed February 22, 1853, a copy of which is annexed marked B, the orators severally discharged their claims for interest credited them on the books of defendant corporation, and received in lieu thereof certificates for the several amounts herein above stated, the said several certificates being in the form prescribed in the aforesaid vote of the directors annexed marked B. That in accepting the said certificates they severally consented to defer the payment of their respective interest dues; and that in issuing said certificates the defendant corporation undertook and agreed that the sums therein named should be paid either on the 15th day of July, 1856, or as soon thereafter as the defendant corporation should be able to pay the same; that said corporation were not able so to pay said certificates on the 15th day of July, 1856, or for many years after that day; but have recently become able to pay the same, and are now able to do so, and have funds now in their treasury which they might and are in duty bound to apply and appropriate to the payment of said interest certificates, and sufficient to pay the same and all other certificates of like kind in full. That the orators have demanded payment of the said certificates, and requested that the said funds be applied to this purpose. Yet the said corporation wholly refuses and neglects to provide for the said certificates and apply the money in its hands to this purpose as was agreed by the said corporation at the time of issuing the same, but has determined to divide the said moneys among the present stockholders of said corporation, and by vote of its directors has declared such a dividend in favor of said stockholders, payable on and after the ninth day of July instant, and unless restrained they will so appropriate said sums instead of paying said interest scrip.

*Prayer:* That said corporation may be ordered and decreed to

pay and satisfy the orators the several sums due them as aforesaid, and may be prohibited from paying out of its treasury any sums therein by way of dividends of profits to stockholders, until the further order of this court ; and for further relief.

### A.

" Whereas the stockholders of the Vermont and Massachusetts Railroad Company did expect an interest dividend in April, 1849 ; and whereas the directors were deterred from declaring it as contemplated by reason of the pecuniary inability of the corporation to meet and pay said dividend ; and whereas ever since said date the pecuniary resources of the corporation have been and still are totally inadequate to meet and pay said dividend ; but nevertheless as it is the wish of the stockholders to have this matter settled, it is therefore hereby voted that the directors be and they are hereby authorized and instructed to declare and adjust said dividends on and after the 15th of April next by uttering certificates therefor, payable on the 15th of July, 1856, to holders of stock on the 15th of April, 1849, or their order, with the express understanding and agreement, that if there is not sufficient money in the treasury to meet the whole amount of said dividend on the day that it falls due, 15th of July, 1856, the holders of said scrip shall each and every one of them receive *pro rata* so much as the treasurer is able to pay, and as soon thereafter as the treasurer is able to pay the balance due on said interest scrips, he shall give due notice of the fact in two or more papers published in the city of Boston."

### B.

" *Voted*, That the interest which accumulated between October 1st, 1848, and April 15th, 1849, on the payments of stock, be and the same is hereby declared and made payable according to the terms of the vote passed by the stockholders at their late annual meeting, on February 9, 1853,.and that the treasurer be empowered to issue certificates according to the purport of the said vote."

" VERMONT AND MASS. R. R. OFFICE, <br> BOSTON, April 15, 1853.

" This is to certify that
are entitled to                                    dollars, being Interest to April 15, 1849, on      share of Vermont and Mass. R. R. Stock, payable to the said                              or order, at this office, agreeably to a vote of the Stockholders, passed February 9th, 1853, a copy of which is on this Certificate.

JOHN ROGERS, <br> *Treasurer.*

" *Voted*, ' That the Directors be, and they are hereby authorized and instructed, to declare and adjust said Dividends, on and after the 15th of April next, by uttering certificates therefor, payable on the 15th of July, 1856, to holders of Stock on the 15th of April, 1849, or to their order, with this express understanding and agreement, that if there is not sufficient money in the Treasury to meet the whole amount of said Dividend on the day that it falls due, (15th July, 1856,) the holders of said scrip shall each and every of them receive, *pro rata*, so much as the Treasurer is able to pay, and as soon thereafter as the Treasurer is able to pay the balance due on said interest scrips, he shall give due notice of the fact in two or more papers published in the city of Boston.' "

The defendants by their answer admitted the allegations of the bill, but insisted that said vote of February 9, 1853, was not authorized by the call for the meeting at which it was passed, and was illegal and invalid, and alleged that some of the certificates held by the orators were issued for a larger sum than interest at six per cent. upon the assessment actually paid in upon the shares therein mentioned, and that the sums therein mentioned represent the interest upon the nominal amount of said shares, when a much less sum was actually paid upon each, and that if the orators had any valid claim against the defendants for the payment of said interest, they had a full and ample remedy at law therefor. The answer was traversed, and the case was heard upon the bill, answer, replication and proofs, before BARRETT, Chancellor, who, *pro forma*, dismissed the bill with costs to the defendants, from which decree the orators appealed.

*H. E. Stoughton*, for the orators.

*Charles P. Marsh*, for the defendants.

The opinion of the court was delivered by

PECK, J.   The corporation had authority to stipulate, as it did, that each stockholder should be entitled to interest on sums paid on stock subscriptions, while the road was in process of construction, till it should be completed and go into operation : payable whenever the surplus earnings should enable it properly to do so, that is, when the corporation should be pecuniarily in condition to

warrant the payment of dividends. In the early stages of such undertakings, the use of money necessary for the construction of the road may be presumed to be worth the legal interest; and therefore he who pays early practically contributes more than he who pays the same sum late. This arrangement for the payment of interest, or interest dividends, so called, is equitable and just, as it is but a mode of distributing benefits among the stockholders in proportion to the aid they have respectively contributed to the common enterprise, and thus producing equality between them. Equality is equity as between the stockholders; and such payment, made only out of the surplus earnings not needed for the payment of debts of the corporation, nor for the prosecution of its business, does not interfere with the rights of creditors, nor contravene any principle of public policy. It is no more withdrawing capital from the corporation than would be the payment of ordinary dividends, to which purpose the fund would otherwise be appropriated. Nor is there any want of legal consideration to uphold the promise. In addition to the equality thereby to be produced among the stockholders, it is apparent that they paid in their money on the faith of this agreement; for it had its origin in the outset of the enterprise. In the original stock subscription contract, there was a recommendation that when the stockholders should be organized as a corporation, they pass a vote binding the corporation to pay interest on all sums assessed and paid in before the road should be put in operation, and that each subscriber have the privilege of paying in, at any time, the whole amount of his subscription after a vote of the stockholders to that effect, and receive interest thereon until the railroad should go into operation. This was carried out at the meeting of the stockholders November 21, 1844, at which the corporation was organized, by the vote of the corporation, " that as soon as any assessment or assessments upon the capital stock shall be laid, each subscriber shall have the privilege of paying in, at any time, the whole amount of his subscription, or any portion thereof, provided that such portion thereof be not less than the amount of one or more assessments, and that all subscribers be allowed interest on all sums paid by them, up to the time when the road shall be completed and put in oper-

ation." It is insisted on the part of the defense that this vote was not binding for the reason that the subject was not specially named in the notice calling the meeting. It is not necessary to pass upon this objection, for the corporation having the right to pass such a vote, and the objection being only to the formality of the proceeding, the defect, if any, was capable of being cured by subsequent ratification. The subsequent action of the corporation, in paying the interest to stockholders under and in pursuance of this vote, as shown by Rogers, the treasurer of the corporation, and other evidence in the case, and particularly in the vote of the corporation at its annual meeting, February 9, 1853, and the vote and action of the directors, and action of the treasurer in carrying out that vote, is a ratification of the vote of November 21, 1844. It appears that the interest was paid to the stockholders from time to time up to October 1, 1848, and that the road was not completed till April 15, 1849, when interest ceased to accrue. The interest accruing from October 1, 1848, to April 15, 1849, remaining unpaid, the vote of the corporation, at the annual meeting February 9, 1853, was passed for the issuing certificates to the stockholders for the amount of such unpaid interest, payable July 15, 1856, with a provision that if there is not sufficient money in the treasury on the 15th of July, 1856, to meet the whole amount of such certificates or dividend, the holders of such scrip shall receive *pro rata* so much as the treasurer is able to pay ; and as soon thereafter as the treasurer is able to pay the balance due on such interest scrip, he shall give notice of the fact, &c. In pursuance of this vote the directors passed the vote of February 22, 1853, and the treasurer proceded to issue the certificates accordingly. The orators seek to recover only according to the terms of these two last votes, and the adjustment made and certificates issued in pursuance of them. It is claimed in defense that the vote of the stockholders of February 9, 1853, is not binding because the subject of the vote was not named in the call of the meeting. The answer to this is that Art. 2 of the by-laws provides that " at the annual meetings any matter may be acted upon within the power of the corporation." We think therefore that the proceedings of the corporation, terminating in the issuing of

the interest certificates, created an obligation upon the corporation
to pay according to the terms and conditions of such certificates.
The policy as well as the validity of such contracts has been fre-
quently recognized. *Waterman* v. *Troy & Greenfield R. R. Co.*,
8 Gray, 433; *Rut. & B. R. R. Co.* v. *Thrall*, 35 Vt., 536. In
*Waterman* v. *Troy & Greenfield R. R. Co.*, the plaintiff failed
upon the ground that the action was premature; the court very
properly holding that the construction of the agreement, (which
was similar to the vote in this case of November 21, 1844,) was,
that the interest was not payable till the road was completed and
in operation, and the corporation in receipt of income from its
business. The conclusion to which we have come in this case is
not in conflict with the decisions in Massachusetts, in suits at law
between some of these stockholders and this defendant corpora-
tion, relative to this interest on payments upon stock subscriptions.
*Wright* v. *Vt. & Mass. R. R. Co.*, 12 Cush., was commenced
July 3, 1849, before the vote of February 9, 1853, fixing the time
and prescribing the contingency upon which the payment should
be made. SHAW, Ch. J., speaking of the vote of November 21,
1844, says: "supposing the original vote of the stockholders
should be regarded as declaring a general right of the stockhold-
ers previously to paying in any instalment on the shares, that each
should be entitled to interest, to be computed on his payments,
from the time of each payment to the time when the railroad
should go into operation and be in condition to earn income and
pay dividends, this would be equitable, because it would put stock-
holders on an equal footing, whether they should pay earlier or
later. It would encourage capitalists to advance their money
early to meet the exigencies of the company before it could enjoy
any income; and it seems right that the use of such capital should
be paid for as a common charge on all." In that case it did not
appear that the road was completed or put in operation at the
commencement of the suit, or that the corporation was pecuniarily
in a condition to pay; and the case turned on the point that the
action was premature. The language of SHAW, Ch. J., in deliv-
ering the opinion of the court, is, that "whether the plaintiff might
or not maintain an action to recover this claim when the road

should be completed and put in operation, we do not perceive how he could do it before that time, without some vote of the corporation fixing the time of payment, and making it payable in money." *Barnard et als.* v. *Vt. & Mass. R. R. Co.*, 7 Allen, 512; and *Cunningham et als.* v. *Vt. & Mass. R. R. Co.*, 12 Gray, 411, were commenced after the railroad was completed and in operation, and after the vote of February 9, 1853, and the issue of the interest certificates in pursuance of it; but the plaintiffs failed to recover, not because the defendant was not under obligation to pay according to that vote, but on the ground that the contingency of the possession by the defendant, of sufficient funds for that purpose, specified in that vote, was not shown. This objection to a recovery by the plaintiff, on which those cases turned, is obviated in this case by the admission in the answer, as well as by the proof in the case, of abundant funds to answer the contingency and fulfill the condition on which the interest was to be paid.

It is claimed by the defendant's counsel, that the interest could not legally be voted to stockholders, who were such at any given time, to the exclusion of others who subsequently acquired stock before the dividend is declared. But no other persons appear to have asserted the right to the interest claimed by the orators, and specified in the orators' certificates of indebtedness, nor are such facts shown as establish any superior equity outstanding in any other persons.

As to the amount on which the interest should be cast upon the seventy-five dollar stock, and the fifty dollar stock, a question is made whether it should be cast upon the $100, the nominal amount of the shares, or upon the sum which the subscribers actually paid. We think, upon the facts appearing in this case, that notwithstanding this stock was to be of equal rank and value as the other stock for which one hundred dollars per share was paid, yet in the matter of this interest, such stockholders should be limited to "*interest on all sums paid by them*," according to the language of the original vote of November 21, 1844, and are not entitled to interest upon the nominal value of one hundred dollars per share, and that the certificates should be reduced accordingly.

There is not such a clear, complete and adequate remedy at law as to require or justify the denial of relief in a court of equity, on the ground that the remedy must be at law. The ability of the corporation to pay, which constitutes the contingency upon which these certificates are payable, must be construed in reference to the nature of the subject, and the relative condition of the parties, and their duty to creditors having a paramount right. The mere fact of the corporation having funds in its treasury, sufficient in amount to pay the orators, would not be sufficient to show the *ability of the corporation* contemplated in the vote and certificates. That ability must consist of a fund adequate, not only for the payment of the claims of the plaintiffs in the cause, but for the payment of all other stockholders having like claims; and must be a surplus fund over and above what is requisite for the payment of the current expenses of the business, for discharging its duties to creditors, and over and above what reasonable prudence would require to be kept in the treasury to meet the accidents, risks, and contingencies incident to the business of operating the railroad. In other words, there must be such pecuniary ability as would, but for the obligation to pay this interest, justify the payment of a dividend to stockholders. The orators' claims are in the nature of claims upon a particular fund, upon which others have an equal claim, and to which another class of claimants may have a paramount right. The determination of the orators' rights might involve an accounting to ascertain the existence and extent of the claims of others standing in like condition with the orators, and also other investigations and inquiries into the condition of the corporation in various aspects, more appropriate for a court of chancery than for a jury in a court of law. The case is one proper for chancery jurisdiction; notwithstanding, in this particular case, the admission in the answer, of funds properly applicable to the payment of these claims if valid, renders proof on these points unnecessary.

The defendant corporation exists and is operating its railroad under and by virtue of acts of the legislature of Vermont and of Massachusetts, respectively. The railroad is a continuous line, located wholly within the two States, being partly in each. It

results legally from this that the courts of Vermont as well as the courts of Massachusetts have jurisdiction of this corporation. In addition to this, it is provided in the said act of the legislature of Vermont, under which the corporation exists, in the manner already stated, that some officer of the company shall at all times be an inhabitant of Vermont, on whom process against the company may be legally served, and the company shall be held to answer in the jurisdiction where the service is made and the process is returnable. The objection urged by the defendant's counsel to the jurisdiction of the courts of Vermont over this corporation, involves the absurdity of holding it not within the jurisdiction of the courts of either State, and is without color of foundation.

The decree of the court. of chancery is reversed, and the orators are entitled to a decree according to the prayer of the bill, with costs, except that on the seventy-five dollar stock and the fifty dollar stock interest should be cast upon the sum paid to the corporation therefor, instead of upon its nominal amount of one hundred dollars per share, and the interest certificates should be reduced accordingly wherever the stock can be identified and distinguished from the stock for which one hundred dollars was paid to the corporation. The cause is remanded to the court of chancery, with directions to enter decree for orators, as above indicated.