Owen, C. J.
The action below was prosecuted upon the supposed promise of the college to pay interest at six per cent, upon $100, the stated value of the share represented by the certificate. The discussions of the case have developed a broad diversity of opinion concerning the true construction of this certificate and the real intention of the parties to it at the time it was issued. We are not called upon to solve the proposition : What does this certificate mean ? We are simply required to say whether it was, at the time the action below was commenced, a matured promise to pay six per cent, interest on $100, and if it was not, no matter what else it is or was intended to be. The certificate certainly does not bear an express promise to pay interest. No time of payment is named. There is no principal which can mature at any time prior to a dissolution of the corporation, and then nothing short of a “ share of real estate ” can satisfy the liability it represents.
In Waterman v. Troy & Greenfield R. Co., 8 Gray, 433, an action was brought upon the following agreement, for the recovery of interest:
“ We, the subscribers associated in this enterprise, do hereby ■severally agree with said corporation to take the number of shares placed against our names respectively, upon the following terms and conditions, viz.: until the proposed railroad is put in operation, interest shall be allowed upon all sums assessed and paid in, and each subscriber shall have the privilege of paying in at any time the whole or any part of his subscription, and shall receive interest thereon until the road goes into operation.”
Bigelow, J., speaking for the court, said: “ This is not a case where interest is claimed as incident to a principal demand ; but it is an action on an agreement for the payment of interest alone, as an independent substantive debt. No time is expressed in the contract for its payment. The question is, *191 whether any can be fairly inferred from the terms of the contract.”
The court held that interest did not accrue until the road went into operation, although several years elapsed between the date of the contract and the completion of the road.
In Wright v. Vermont & M. R. Co., 12 Cush. 68, the stockholders of a railroad company, at the first meeting voted: “ That all subscribers be allowed interest on all sums paid by them up to the time when the road shall be completed and put in operation.” It was held that by this vote interest was not payable until the road was completed. Shaw, C. J., says: “ Taking the legal obligation of the company to pay interest, on the ground on which the plaintiff places it, interest was not payable annually, or at any other period, because the votes did not so provide. We think there was no implied promise to pay interest annually, even if such promise might be implied from undertaking to pay money at a distant day, with interest in the mean time, because here was no debt, no principal sum, to be paid. The directors have put no practical coivstruction upon the votes, by paying annually."
In Rutland & B. R. Co. v. Thrall, 35 Vt. 543, a subscription was conditioned that: “ Interest shall be allowed and paid by the company on all sums assessed and paid, from the time of payment until the railroad shall bo put in opex’ation.” It was claimed that this condition was in substance an agreement by the coxnpany to pay back to the subscribers part of the capital required by the charter, and void. The court say: “We deem this point untenable. No time is fixed for the payment of interest. Upon a similar proviso in Waterman v. Troy & Greenfield R. Co. (cited supra), it was held that the agreement did not bind the company to pay interest before the road went into operation.”
It is well settled that our statutes relating to interest were intended to fix the rate, and not the time of payment. Monett v. Sturges, 25 Ohio St. 385; Cook v. Courtright, 40 Ohio St. 248.
“ An act to fix the rate of interest ” (29 Ohio L. 451), in fox’ce when this certificate was issued, provided: “ That all *192 creditors shall be entitled to receive interest on all money, after the same shall become due, either on bond, bill, promissory note, or other instrument of writing, or contract for money or properly; .... at the rate of six per cent, per annum and no more.'” If parties would have their agreements bear interest before maturity, or if they would have the interest payable at an earlier day, they must so stipulate.
The tendency of this court to hold parties to the express stipulations of their agreements, so far as they concern the time of payment of interest, is well illustrated by Patterson v. McNeeley, 16 Ohio St. 348. In that case a promissory note had the following clause: “ The above to be at ten per cent, interest annually.” The court say: “The whole clause certainly contains no express reference to anything else, than the rate of interest which the note shall bear, and the words used are all pertinent and necessary in defining that rate with precision. And we see no room for the inference that anything more was meant than that the note should bear interest at the rate óf ten per cent, per annum.” It was held that the word “ annually ” was to be understood as relating to and defining the rate of interest, and was not a stipulation for the annual payment of interest.
There are no words in this certificate to suggest, in the most remote degree, when the interest was to be paid. If the parties intended it to be a “ contract for property,” (in the language of the interest act above cited), which should bear interest to be paid before the principal was due, they were unfortunate in the selection of language to express that intention.
2. There are other considerations, however, which seem conclusive against the construction - which the defendant in error claims for this certificate. While its charter gave to this corporation power to make contracts, this power, by a fundamental rule of construction, is to be limited to the-making of such contracts, as are likely to promote the general purposes of its creation.
The corporation was not organized for profit, and it made none. All its member are dentists. So is the plaintiff. The *193 purpose of its organization was the maintenance of a college for instruction in the science of dental surgery — an -enterprise in which all its members, as well as the plaintiff, had an interest beyond the hope of mere private pecuniary gain. There were issued in all one hundred and twenty certificates of “shares of real estate property of the college,” — “shares, $100 each.” These certificates represent, without interest, $12,000. It is agreed that this sum represents the entire property of the college. We do not feel at liberty to give a construction to this certificate which must imply that the parties to it intended that its enforcement would inevitably work a dissolution of the corporation and the defeat of the purposes for which it was embarked. If the holders of these certificates may successfully press their demands for interest upon them, the utter destruction of the corporation and defeat of its purposes are inevitable. Each certificate holder was and is a member of the corporation. The certificates represent, exclusively, its capital. The money paid upon them was invested in the real estate, which constitutes its entire assets. It has made no profits. There has never been a time in its history when the demand and enforced collection of interest on its certificates would have had any other effect than its complete dissolution and the hopeless defeat of the only purposes of its organization. The suggestion that these dentists, while pretending to set on foot an enterprise for the maintenance of a college for instruction in the very important and useful science of dental surgery, were really concocting a scheme to constitute themselves pensioners or annuitants upon the college, and hence upon each other, to the extent of $6.00 a year for each certificate, involves too grave a reflection upon either their good faith or their sanity to justify us in reaching such a conclusion without a clear expression of such a purpose. The improbability, if not the absurdity of such a construction of these certificates will become apparent when we reflect that these pensions or annuities could only be paid out of the capital of the college ! An attempt to enforce their collection would inevitablv involve the entire enterprise in hopeless ruin. It *194 not only aids us in construing this contract, but it is highly creditable to all concerned in the college, to recall the fact that although it is more than forty years old, not a dime of interest has ever been collected or paid upon any of its certificates.
We have seen that in the case of Wright v. Vermont & M. R. Co., supra, much significance was attached to the fact that the parties had construed the contract by failing to provide for the payment of interest before completion of the road.
3. We may well conclude our consideration of this case with the proposition that if this certificate is to be construed (as the defendant in error contends), to embrace a contract to-pay interest either annually or on demand, out of the capital of the college — and it must be paid out of the capital if at all — the contract is a nullity. In Painesville & H. R. Co. v. King, 17 Ohio St. 534, the directors of a railroad corporation assumed to sell shares of the capital stock, stipulating, expressly, for the payment of interest annually on such stock until the completion of the road. As in the case at bar, it appeared that the company had no means for the payment of interest except its capital stock. It was held that such payment of interest could not be enforced by action. Scott, J., said: “ If all the stockholders are, by similar contracts or otherwise, entitled to demand interest on stock paid in, we think it is clearly against public policy that the stock subscribed for the building of the road should be diverted from its proper purpose, and distributed among the stockholders in payment of interest.” Every consideration of public policy which affected the case last cited, applies with equal force to the case at bar. That promises by a corporation to pay its members interest on their shares out of the capital are void, is abundantly established by authority : Miller v. Pittsburgh & C. R. Co., 40 Pa. St. 237; Richardson v. Vermont & M. R. Co., 44 Vt. 613; Cunningham v. Vermont & M. R. Co„ 12 Gray, 411; Lockhart v. Van Alstyne, 31 Mich. 76; Cook’s Stock and Stockholders, § 277.
4. There is nothing in the record before us (unless it be the fact of the prosecution of the case below) to suggest that any member of this corporation desires or intends its dissolution. *195 It is a going corporation. Its object is a worthy and benevolent one. We cannot conclude, after the construction which its members have for so many years given to their certificates, that they intended by them to provide for the summary destruction of the college, at the caprice of any member; a result which must inevitably follow the construction we are asked by the defendant in error to place upon them. Each certificate clearly evidences an equitable interest in the real estate of the college. It is idle to prosecute our inquiries concerning their meaning beyond the conclusion we have reached that they do not represent a matured promise to pay interest before the holders may, by dissolution of the corporation or otherwise, reduce to individual and separate ownership, their respective interests in such real estate.

Judgment reversed.