DERICK L. BOARDMAN et al., Executors, etc., Respondents, *v.* THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY, Appellant.

Where preferred guaranteed stock is issued by a railroad company, the holders, although they are not entitled to dividends when no profits are earned, yet are first entitled to be paid the amount of dividends specified and guaranteed, including all arrears, before the holders of common stock are entitled to any thing.

A shareholder in a corporation is not entitled to any of the property or profits until a division has been made or a dividend declared.

When a dividend is declared it belongs to the owners of the stock at the time, but until such declaration, the profits form part of the assets ; and an assignment by a stockholder of his shares carries with it his proportionate share of the assets including all undeclared dividends.

While as a general rule the officers of a corporation are the sole judges as to the propriety of declaring dividends, and the courts will not interfere with a proper exercise of their discretion, where the right to a dividend is clear and fixed by contract, and requires the directors to take action before the right can be asserted by an action at law, a court of equity will interpose to compel such action, and when necessary, to restrain, by injunction, any action adverse to such right.

A foreign corporation sued in this State cannot avail itself of the statute of limitations; and this, although it has, for the time specified in the statute, before the commencement of the action, continuously operated a railroad in this State, and has property and officers therein.

In 1857 the M. S. & N. I. R. R. Co. issued certain preferred and guaranteed stock ; the certificates therefor stated that the stock was entitled to annual dividends at the rate of ten per cent, payable semi-annually, at days specified, out of the net earnings of the company, and also to share *pro rata* with the other stock in any excess, and that the payment of the dividends was thereby guaranteed. Said company was consolidated with defendant, the latter assuming its obligations. No dividends were paid upon the said stock until 1863, and the arrears were not subsequently paid although dividends were declared and paid upon the common stock. In an action to compel the payment of the back dividends, for the purpose of showing authority for the issue of the stock, the book of minutes, containing certain resolutions of the board of directors of said M. S. & N. I. R. R. Co. authorizing the issue of the preferred guaranteed stock, was offered and received in evidence under the objection that the certificate was the contract and could not be varied by other evidence. *Held,* no error; that the whole proceeding relating to the issue of the stock could be taken in connection as constituting the one transaction.

The resolution of the directors declared that dividends on the stock author-

ized to be issued should always be paid out of any net earnings before any portion should be applied to pay dividends on the other stock. *Held,* that this was in effect the contract as expressed in the certificate ; and that under it the dividends were not only preferred, but being guaranteed, were cumulative and a specific charge upon the accruing profits, and in case of a failure in any year to earn profits sufficient to pay the dividends specified, they were to be paid as arrears before any dividends were paid upon the common stock.

There was no proof of plaintiffs' title to the preferred stock except the certificate issued to plaintiffs' testator. *Held,* that in the absence of proof of the issue of other stock of this description the presumption was that plaintiffs' stock was a portion of that so authorized to be issued, and that plaintiffs were the lawful owners.

Plaintiffs' testator did not become owner of the stock until 1862. *Held,* that the transfer to him carried with it all right to the unpaid dividends.

*Hill* v. *The N. Co.* (8 Hun, 459; affirmed, 71 N. Y. 593), distinguished.

The complaint asked and the judgment directed a specific performance of the contract and restrained defendant from paying dividends upon that portion of its common stock which represented the common stock of the M. S. & N. I. R. R. Co. until the amount of the arrears was paid. *Held,* no error; that plaintiff was entitled to the equitable relief granted.

*Coey* v. *B. & C. D. R. R. Co.* (2 Irish R. [C. L. S.] 112), distinguished.

Also, *held,* that an action was maintainable against defendant alone as the representative of the corporation with which the contract was made.

Also, *held,* that, as the claim was originally against a foreign corporation and as the articles of consolidation by which defendant assumed the obligation took effect within six years of the commencement of the action, the statute of limitations did not run against plaintiffs' claim; also that as it did not appear that any action on the part of defendant was induced by the delay in prosecuting said claim, plaintiff was not estopped by such delay.

*Kent* v. *Q. M. Co.* (78 N. Y. 184), *Coles* v. *Bank of England* (10 Ad. & El. 437), *Pickard* v. *Sears* (6 id. 474), *Prendergast* v. *Turton* (1 Younge & Coll. 98), *Stafford* v. *Strofford* (1 De Gex & J. 193), *Nichols* v. *Gilson* (3 Atk. 573), *Currie* v. *Goold* (2 Mad. Ch. 426), *Matthews* v. *G. N. R. R. Co.* (5 Jurist [N. S.], Part 1, 284, 290) distinguished.

Defendant was organized as a corporation under the statutes of several States to operate a continuous line of road running through those States which had previously been operated by the consolidated corporations. It was claimed that those statutes, so far as they authorized the consolidation in adjoining States, were repugnant to the provision of the U. S. Constitution (art. 1, § 8, sub. 3), conferring on Congress the power to regulate commerce with foreign nations and among the several States. *Held,* untenable ; that in the absence of any legislation by Congress upon the subject, the power so to legislate existed in the States.

Also, *held,* that plaintiff was entitled to recover interest.

The rule laid down by the English authorities where interest upon annuities was refused, *held* not to apply.

(Argued November 12, 1880; decided March 1, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made June 4, 1879, affirming a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

This action was brought by George S. Boardman, plaintiffs' testator, in August, 1875, to compel defendant to pay dividends upon certain shares of preferred stock held by him and to restrain it from paying dividends upon certain portions of its common stock until the claim of plaintiff was paid and satisfied. The original plaintiff having died after trial and before the decision the present plaintiffs were substituted.

The facts found by the court are substantially as follows:

From and during the year 1857, until in or about the year 1869, the Michigan Southern and Northern Indiana Railroad Company was a corporation created and existing under the laws of the respective States of Michigan, Ohio, Indiana and Illinois, and was the owner of and engaged in operating railroads lying in the said States. About the month of April, 1857, the said corporation having become indebted to a large amount, a plan was devised to raise funds by the issue of preferred stock. The plan was submitted for approval to the stockholders of the said corporation at their regular annual meeting in April, 1857, and thereupon the same was approved by a vote or resolution adopted unanimously. On or about the 5th day of May, 1857, the then board of directors of the said company duly voted to issue the said preferred stock, and for that purpose unanimously adopted a resolution as follows:

"*Resolved*, That for the purpose of providing means for the payment of the unfunded debts of this company and for the completion of its unfinished works, there be and there is hereby created a guaranteed and preferred stock of this company, to be denominated 'construction stock,' to the amount of $3,000,000, which stock shall be entitled to dividends at

the rate of ten per cent per annum, payable in cash semi-annually in New York, and in the payment of such dividends the said guaranteed stock shall have preference and priority over the remaining stock of the company, and dividends at the rate aforesaid shall always be paid upon said guaranteed stock out of any net earnings of the company before any portion of said net earnings shall be applied to the payment of dividends upon the remaining stock of the company; and in case the earnings of the road shall enable the company hereafter to pay dividends upon all of its stock at a rate exceeding ten per cent per annum, then such guaranteed stock shall be entitled to share, *pro rata* with the other stock, in such excess over ten per cent per annum. The first dividend on said stock will be payable the 1st day of December next, and thereafter on the 1st of June and 1st December in each year."

Notice was given to the public and to stockholders, and books of subscription were opened and the amount of stock offered was subscribed for and taken. The book of minutes containing those resolutions was received in evidence under objection and exception.

No dividend whatever was declared or paid by the company upon the said guaranteed or construction stock from the date of the issue thereof until on or about the 1st day of July, 1863, at or about which time the then directors of the said corporation declared and announced a dividend of five per cent on so much of said stock as was then outstanding, payable on the 1st day of August, 1863, for the six months prior to that date.

After that date, and down to the time of the consolidation hereinafter mentioned, the said company regularly earned, declared and paid the said percentage or dividend of five per cent for each successive period of six months upon said stock.

The company realized and accumulated surplus earnings over and above the dividends so paid, and its board of directors declared and announced a dividend of three and one-half per cent upon its common stock, payable August 1, 1864, which was paid, and also declared and paid a second dividend of like amount, payable March 1, 1865; said two dividends

amounting to a sum sufficient, if applied for that purpose, to cancel and pay off the whole arrears of dividends upon the guaranteed or construction stock which was outstanding at the time of the commencement of this action. After the said 1st day of March, 1865, other dividends were declared and paid by the said company upon the common stock.

On November 26, 1862, twenty-three shares of said preferred stock were assigned to plaintiffs' testator, and a certificate of the said shares was contemporaneously with such sale delivered to him; such certificate being in the form adopted by the said board of directors, and which was printed in blank to be filled up in writing. The form of the certificate is as follows:

"*Michigan Southern and Northern Indiana Railroad Company.*

" Guaranteed ten per cent stock.

" This is to certify that........................entitled to...............shares of $100 each in the capital stock of the Michigan Southern and Northern Indiana Railroad Company, denominated construction stock; said stock is entitled to dividends at the rate of ten per cent per annum, payable semi-annually in New York on the 1st days of June and December in each year, out of the net earnings of the said company; and is also entitled to share *pro rata* with the other stock of the company in any excess of earnings over ten per cent per annum, and the payment of dividends as aforesaid is hereby guaranteed. The said stock is transferable only on the books of the said company at their office in the city of New York by the said stockholder in person, or by.................., attorney, on the surrender of this certificate.

" In witness whereof the said company have caused the same to be registered, and this certificate to be signed by their president and treasurer and countersigned by their secretary."

In or about the year 1869, pursuant to the provisions of certain acts of the legislatures of the States of Pennsylvania, Ohio,

Michigan, Indiana and Illinois, the Michigan Southern and Northern Indiana Railroad Company was merged and consolidated with the Lake Shore Railway Company, which owned and operated a railroad extending from the city of Erie, in the said State of Pennsylvania, to the city of Toledo, in the said State of Ohio, and the consolidated company so formed took and assumed the name of the Lake Shore and Michigan Southern Railway Company. Afterward, and pursuant to the provisions of the act of the legislature of the State of New York, entitled "An act authorizing the consolidation of certain railroad companies," passed May 20, 1869, and also pursuant to the provisions of certain laws of the said States of Pennsylvania, Ohio, Michigan, Indiana and Illinois, the Buffalo and Erie Railroad Company, a corporation created and existing under and by virtue of the laws of the States of New York and Pennsylvania, and which owned and operated a railroad extending from Buffalo to the eastern terminus of the line of railway of the Lake Shore and Michigan Southern Railway Company, was merged and consolidated with the Lake Shore and Michigan Southern Railway Company. At the time of such consolidation the Buffalo and Erie Railroad Company and the Lake Shore and Michigan Southern Railway Company owned and operated lines of railroad, which, taken together, formed a continuous line of railroad extending from the city of Buffalo to Chicago, in the said State of Illinois. The said company so formed by last-mentioned merger and consolidation assumed the name of and became and is known as the Lake Shore and Michigan Southern Railway Company, which is the defendant in this action; the agreement for the merger and consolidation last mentioned was filed and recorded in the office of the secretary of State of the State of New York on the 14th day of August, 1869.

By the provisions of the several statutes authorizing the consolidation, the rights of all the creditors of, and all the liens upon the property of the Michigan Southern and Northern Indiana Railroad Company were to be and were preserved unimpaired; by the said agreement of consolidation all just debts, guarantees,

liabilities and obligations existing against either of the said companies, parties to said agreement at the time of the taking effect of said consolidation, were assumed by the said consolidated company; and all contracts and agreements existing between either of the said parties to the said agreement of consolidation and other companies, or with any person or persons, were to be carried out and performed by the said consolidated company.

At the request of defendant's counsel the referee found the following additional facts: That plaintiff has received dividends semi-annually on said stock from and including August 1, 1863, until the trial of this cause; that the said Michigan Southern and Northern Indiana Railroad Company had at all times, between April 1, 1857, and June, 1869 (the time when it consolidated with the Lake Shore Railway Company), an office and place of business in the city of New York, in the State of New York, and that during such period its president, treasurer, and a majority of its directors, resided in the State of New York; that it had and owned property in the State of New York at all times between April 1, 1857, and the time it consolidated as aforesaid; that the defendant had at all times since August, 1869, an office and place of business and property in the city of New York, in the State of New York, and that during such period its president, treasurer, and a majority of its directors resided within the State of New York; that the certificate of shares of stock, given in evidence by the said plaintiff, is the only proof of his ownership of or title to the stock upon which he seeks to recover dividends in this action; that no dividends were declared by the Michigan Southern and Northern Indiana Railroad Company at any time prior to the dividend made payable August 1, 1863, on the stock in question; that the said company never at any time recognized any claim for back dividends on the stock in question as a debt or valid liability or obligation against it; that the said company did not at any time after May, 1857, and prior to August 1, 1863 (the time when it paid its first dividend on this stock), realize or earn any moneys which should or ought to have been applied to the pay-

ment of dividends on the plaintiffs' or on any of the guaranteed or construction stock which was authorized to be issued by the said company as aforesaid.

Further facts appear in the opinion.

*James Matthews and Edward S. Rapallo* for appellant. The contract between the purchaser of the stock and the company is that contract contained in the wording of the certificate. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 180; *McCluskey* v. *Cromwell*, 11 id. 593, 601; *Wilson* v. *Dean*, 74 id. 531; *Henry* v. *The Great Northern Ry. Co.*, 3 Jur. [N. S.] part 1, 1137; *Taft* v. *The H. P. & F. R. R. Co.*, 8 R. I. 310; *Stevens* v. *The South Devon R. R. Co.*, 12 Eng. L. & Eq. 229; *Crawford* v. *The North-eastern Ry. Co.*, 3 Jur., part 1, 1093; *Sturges* v. *The East U. R. R.*, 31 Eng. L. & Eq. 406; *Miller* v. *Ill. Cent. R. R. Co.*, 24 Barb. 329; *Miller* v. *Travers*, 8 Bing. 244; *Sanderson* v. *Piper*, 5 Bing. N. C. 425; *Reed* v. *Prop. of Locks, etc.*, 8 How. [U. S.] 274; *Sargent* v. *Adams*, 3 Gray [Mass.], 72.) The court erred in finding as a fact that the shares of stock, upon which the plaintiffs sue, are a portion of the $3,000,000 issue of 1857, upon which the non-payment of dividends has been proved, there being no evidence of the identity of the plaintiffs' stock with a part of the issue. (*Putnam* v. *Hubbell*, 42 N. Y. 106–112.) The court erred in giving plaintiffs judgment for the amount of dividends unpaid during the whole period from 1857 to 1863, in view of the fact that plaintiffs' testator did not become owner of the stock until 1862. (*Hyatt* v. *Allen*, 56 N. Y. 553; *LeRoy* v. *The Globe Ins. Co.*, 2 Edw. Ch. 656; *Hill* v. *Newechawanick Co.*, 8 Hun, 459; 71 N. Y. 593; *Jones* v. *Terre Haute*, 29 Barb. 353, and 57 N. Y. 196; *Van Wicklen* v. *Paulson*, 14 Barb. 654.) A court of equity possesses no general visitorial powers over corporations, except such as are expressly conferred by statute. (*Latimer* v. *Eddy*, 46 Barb. 61; *Karnes* v. *Roch., etc., R. R.*, 4 Abb. [N. S.] 107; *Bangs* v. *McIntosh*, 23 Barb. 599; *Howe* v. *Dennel*, 43 id. 505; *Belmont* v. *Erie Ry. Co.*, 52 id. 666–8; *Atty.-Gen.* v. *Bk. of Niagara*, Hopk. Ch. [2d ed.]

412; *State of La.* v. *Bk. of La.,* 6 La. 745; *Brown* v. *Monmouthshire Ry. Co.,* 4 Eng. L. & Eq. 118; *Jackson* v. *Newark R. R. Co.,* 2 Vroom [3 N. J.], 277; *Rex* v. *Bk. of Eng.,* 2 Barn. & Ald. 620; *Karnes* v. *Rochester & Gen.,* 4 Abb. [N. S.] 107; *Howe* v. *Peckham,* 6 How. Pr. 232; *Cropsey* v. *Sweeney,* 27 Barb. 310; *Madison Ave. B. Church* v. *Same,* 26 How. Pr. 72; *Mutual Benefit Life Ins. Co.* v. *The Supervisors of N. Y.,* 32 id. 359; *Livingston* v. *Hollenbeck,* 4 Barb. 10; *Craig* v. *Hyde,* 24 id. 313; *Kempsall* v. *Stone,* 5 Johns. Ch. 193; *Hatch* v. *Cobb,* 4 id. 559; *Pfeer* v. *Kissam,* 3 Edw. Ch. 129.) The consolidation, although made with the permission of the various States, constituted nothing more than a species of copartnership of the various corporations, and this defendant is in the nature of a firm, and cannot be sued as one individual. (*Farnum* v. *The Blackstone Canal Co.,* 1 Sumner, 46; *Bk. of Augusta* v. *Earle,* 13 Peters, 588; *Ohio & Miss. R. Co.* v. *Wheeler,* 1 Black [U. S.], 295; *Racine & M. R. Co.* v. *Farmers' L. & Trust Co.,* 49 Ill. 331; *Railway Co.* v. *Whitton,* 13 Wall. 270; *Muller* v. *Dows,* 94 U. S. [4 Otto] 444–7.) The plaintiffs are now precluded and estopped from recovering sums of money which should rightly be distributed as dividends, or go to the benefit of those who are now the common stockholders. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 184; *Coles* v. *The Bk. of Eng.,* 10 Ad. & Ellis, 437; *Rickard* v. *Seares,* 6 id. 474; *Manufacturing Bk.* v. *Hazzard,* 30 N. Y. 226; *Prendergast* v. *Turton,* 1 Younge & Collyer, 98; *Nichols* v. *Leeson,* 3 Atk. 573; *Currie* v. *Goold,* 2 Mad. 163; *Matthews* v. *The Great Northern R. Co.,* 5 Jur. [N. S.], part 1, 284, 290; *Stafford* v. *Stafford,* 1 DeGex & Jones, 193.) The acts of the legislatures of the several States through which the railroads mentioned in the pleadings and proofs in this action run are, so far as they relate to, provide for, or authorize the consolidation of the railroads in the adjoining States, in violation of subdivision 3 of section 8 of article 1 of the Constitution of the United States. (*Munn* v. *Illinois,* 94 U. S. [4 Otto] 13.) The laches and acquiescence of plaintiff's testator

operated as a bar to this action. (1 Wait's Actions and Defenses, 152, 153, 198.)

*Lucien Birdseye* for respondents. This action did not involve the internal affairs of a foreign corporation in any such way as to deprive the court of jurisdiction. (*Da Costa* v. *Jones*, Cow. 729.) The Michigan Southern and Northern Indiana Railroad Company had lawful authority to issue the guaranteed stock in question, and to confer upon and attach to it the privileges claimed by the plaintiffs in this action. (*Prouty* v. *The M. S. & N. I. R. R. Co.*, 1 Hun, 663; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 181; *Davis* v. *Prop'rs of Meeting House in Lowell*, 8 Metc. 321; *Bates* v. *Androscoggin & Kennebeck R. R. Co.*, 49 Me. 491; *Rutland, etc., R. R. Co.* v. *Thrall*, 35 Vt. 536; *Williston* v. *M. S. & N. I. R. R. Co.*, 28 Penn. St. 321; *Lockhart* v. *Van Alstyne*, 31 Mich. 76; *McLaughlin* v. *Detroit, etc., R. R. Co.*, 8 id. 100; *Evansville, etc., R. R. Co.* v. *City of E.*, 15 Ind. 395; *Haselhurst* v. *Savannah R. R. Co.*, 43 Ga. 13; *Totten* v. *Tison*, 54 id. 139; *Kent* v. *Quicksilver Co.*, 12 Hun, 53; 78 N. Y. 159; *Howell* v. *Chicago & N. W. R. R. Co.*, 51 Barb. 378; *Bailey* v. *Hannibal & St. Joseph R. R. Co.*, 17 Wall. 97; 1 Dillon, 174; *Harrison* v. *Mexican R'y Co.*, 12 Eng. [Moak's Notes] 793; *Sturge* v. *Eastern Union R'y Co.*, 7 De Gex, McN. & G. 158; *Matthews* v. *Gt. N. R'y Co.*, 5 Jurist [N. S.], part 1, p. 284; *Corry* v. *Londonderry & En. R. R. Co.*, 29 Beav. 263; *Matter of Anglo-Danubian Steam Nav. Co.*, L. R., 20 Eq. 239; *Matter of London India Rubber Co.*, L. R., 5 id. 519; *Matter of Bangor, etc., Slab Co.*, L. R., 20 id. 59; *S. C.*, 13 Eng. [Moak's Notes] 606; *Matter of London Permanent Building Co.*, 17 Weekly, 513; affirmed, 21 L. T. [N. S.] 8; Redfield on Railways, § 237; Field on Corporations, 136; Green's Brice's Ultra Vires, 145.) The rights of the holders of this guaranteed stock against the corporation issuing it were created at the time of the creation of and agreement to issue the stock. (*Kortright* v. *Buffalo Com. Bk.*, 20 Wend. 91, 94; 22 id. 348; *Bank of*

*Attica* v. *Manuf. & Traders' Bk.*, 20 N. Y. 501; *Ormsby* v. *Vt. Copper M. Co.*, 56 id. 623; *Hughes* v. *The Same*, 72 id. 207; *Presbyterian Congregation* v. *Carlisle Bk.*, 5 Barr. [Penn.] 345; *Slaymaker* v. *Bank of Gettysburg*, 10 id. 373; *Bates* v. *Androscoggin & Ken. R. R. Co.*, 49 Me. 491; *Davis* v. *Prop. of Meeting House in Lowell*, 8 Metc. 321; *Ellis* v. *Essex Merrimack Bridge Co.*, 2 Pick. 243; *Sargent* v. *Franklin Ins. Co.*, 8 id. 90, 98; *Field* v. *Pierce*, 102 Mass. 261; *Richardson* v. *Vt. & Mass. R. R. Co.*, 44 Vt. 613; *Bailey* v. *Hannibal & St. Joseph R. R. Co.*, 1 Dillon, 174; affirmed, 17 Wall. 96; *City of Ohio* v. *Cleve. & Toledo R. R. Co.*, 6 Ohio St. 489; *Pittsburg & C. R. R. Co. of Alleghany*, 63 Penn. St. 126; *Agricultural Bk.* v. *Burr*, 24 Me. 256; *Agricultural Bk.* v. *Wilson*, id. 273; *Chester Glass Co.* v. *Dewey*, 15 Mass. 93, 101; *Merchants' Bk.* v. *Cook*, 4 Pick. 405; *Evansville, etc., R. R. Co.* v. *City of Evansville*, 15 Ind. 395; *Davis* v. *Bk. of England*, 2 Bing. 393; *Taylor* v. *Midland R. Co.*, 28 Beav. 287; *Sloman* v. *Bk. of England*, 14 Sim. 775; *Ashley* v. *Blackwell*, 2 Eden, 299; *Hoagland* v. *Bell*, 36 Barb. 57; *Phœnix Warehousing Co.* v. *Badger*, 67 N. Y. 294; *Mechanics' Bk.* v. *N. Y. & N. H. R. R. Co.*, 13 id. 599; *Ketchum* v. *Stevens*, 17 id. 499; *Mc-Cready* v. *Ramsay, Prest.*, 6 Duer, 574; *Stevens* v. *South Devon R. Co.*, 9 Hare, 313; *S. C.*, 21 L. J. Ch. [N. S.] 316; 12 Eng. L. & Eq. 229; *Sturge* v. *Eastern Union R. Co.*, 7 De Gex, McN. & G. 158; *S. C.*, 31 Eng. L. & Eq. 406; *Crawford* v. *N. E. R. Co.*, 3 Kay & J. 723; *S. C.*, 3 Jurist [N. S.], part 1, p. 1093; *Henry* v. *Gt. N. R. Co.*, 3 Kay & J. 723; *S. C.*, 3 Jurist [N. S.], part 1, p. 1117; *S. C.*, 1 Kay & J. 1; 3 Jurist [N. S.], part 1, p. 1133; *S. C.*, 1 De Gex & Jones, 606; *Matthews* v. *G. N. R. Co.*, 5 Jurist [N. S.], part 1, p. 284; *Corry* v. *Londonderry & E. R. Co.*, 29 Beav. 263; *Harrison* v. *Mexican R. Co.*, L. R., 19 Eq. Cas. 358; *S. C.*, 13 Eng. R. 793 [Moak's Notes]; *Lockhart* v. *Van Alstyne*, 31 Mich. 76.) The annual reports of the M. S. & N. I. R. R. Co., and the annual reports of the defendant corporation were properly admitted in evidence. (*London, B'r*

*& S. C. R. Co.* v. *Goodwin,* 3 Exch. 320 ; 6 Railway Cases, 177 ; *Phil., W. & B. R. R.* v. *Howard,* 13 How. [U. S.] 307 ; *Eastern Union R. Co.* v. *Cochrane,* 24 Eng. L. & Eq. 495 ; *Ind., Cin. & Lafayette R. R. Co.* v. *Jones,* 29 Ind. 465 ; *C. C. & J. C. R. R. Co.* v. *Powell,* 40 Ind. 374 ; *King* v. *Mothersell,* 1 Strange, 93, citing *Thetford's Case,* 12 Vin. Abr. 90, pl. 16 ; *King* v. *Martin,* 2 Camp. N. P. 100 ; *Bretton* v. *Cope,* Peake's Cases, 30 ; *Turnpike Co.* v. *McKean,* 10 Johns. 154 ; *Wood* v. *Jefferson Co. Bank,* 9 Cow. 194, 205 ; *Owings* v. *Speed,* 5 Wheat. 420, 423–4 ; *Baptist Church* v. *Mulford,* 3 Halst. 182 ; *Gray* v. *Turnpike Co.,* 4 Rand. 578 ; *Duke* v. *Cahawa Nav. Co.,* 10 Ala. 82 ; *Hall* v. *Carey,* 5 Ga. 239 ; *Ryder* v. *Alton & Sangamon R. R. Co.,* 13 Ill. (3 Peck), 516 ; *Citizens' Passenger R. Co.* v. *City of Phila.,* 49 Penn. St. 251 ; *P. W. & B. R. R. Co.* v. *Howard,* 13 How. [U. S.] 307 ; *U. S.* v. *Gooding,* 12 Wheat. 460, 470 ; *American Fur Co.* v. *U. S.,* 2 Pet. 358, 364 ; *Franklin Bk.* v. *Steward,* 37 Me. 524 ; *Smith* v. *Palmer,* 6 Cush. 513, 520.) The dividends on the guaranteed stock in question are cumulative ; that is, if not regularly paid from time to time, they accumulated as arrears to be paid afterward, before any dividends were paid upon the common stock. (Lindley on Part. 655* ; *Stevens* v. *South Devon R'way Co.,* 9 Hare, 313 ; 21 Alb. L. J. Rep. Ch. [N. S.] 816 ; 12 Eng. L. & Eq. 229 [S. C.] ; *Sturge* v. *The East Union R'way Co.,* 7 De Gex, McN. & G. 158 ; *S. C.,* 31 Eng. L. & Eq. 406 ; *Crawford* v. *The North-eastern R'y Co.,* 3 Jur. [N. S.] part 1, p. 1093 ; *S. C.,* 3 Kay & J. 723 ; *Henry* v. *Great N. R'y Co.,* 3 Jur. [N. S.], part 1, p. 1117 ; *S. C.,* 1 Kay & J. 1 ; 3 Jur. [N. S.], part 1, p. 1133 ; *S. C.,* 1 De Gex & Jones, 606 ; *Matthews* v. *The Gt. Northern R'y Co.,* 5 Jur. [N. S.], part 1, p. 284 ; *Corry* v. *The Londonderry & Enniskillen R. Co.,* 29 Beav. 263 ; *Coey* v. *Belfast & County Down R. Co.,* Irish Rep., 2 C. L. 112 ; *Smith* v. *Cork & Brandon R. Co., ubi supra ; Matter of London India Rubber Co.,* L. R., 5 Eq. Cas. 519 ; *Matter of Bangor & Port Madoc Slate & Slab Co.,* L. R., 20 Eq. 59 ; *Melhado* v. *Hamilton,* 21 Wend. 619 ; *Williston* v. *M. S. & N. I. R. R. Co.,* 13 Allen, 400,

405; *Taft* v. *H. P. & F. R. R. Co.*, 8 R. I. 310, 334–5; *Prouty* v. *M. S. & N. I. R. R. Co.*, 1 Hun, 653; *Westchester & Phil. R. R. Co.* v. *Jackson*, 77 Penn. St. 321; *Totten* v. *Tison*, 54 Ga. 139; *Lockhart* v. *Van Alstyne*, 31 Mich. 76–79, etc.; *McLaughlin* v. *Detroit & Mil. R. R. Co.*, 8 id. 100; *Jones* v. *Terre Haute & Rich'd R. R. Co.*, 57 N. Y. 196; *Hill* v. *Newichawanick Co.*, 8 Hun, 459; affirmed, 71 id. 593; *Rider* v. *Alton, etc., R. R. Co.*, 13 Ill. 516, 520; *March* v. *Eastern R. R. Co.*, 43 N. H. 515; *Union B'k* v. *State*, 9 Yerg. 490; *Crawford* v. *North-east R. Co.*, 3 Kay & J. 723, 744; *Henry* v. *Gt. N. R. Co.*, 1 De G. & J. 616, 637; *State of Conn.* v. *Norwich & Worcester R. R. Co.*, 30 Conn. 290; *Everhart* v. *Westchester & Phil. R. R. Co.*, 28 Penn. St. 329; *Rutland & B. R. R. Co.* v. *Thrall*, 35 Vt. 536, 545; *Correy* v. *Londonderry & En. R. Co.*, 29 Beav. 263; *Smith* v. *Cork & Brandon R. Co.*, 5 Ir. Eq. 65; *Hutton* v. *Scarborough Cliff Hotel Co.*, 2 De & Sm. 574; 13 W. R. 631; *Harrison* v. *Mexican R. Co.*, L. R., 19 Eq. C. 358; *S. C.*, 12 Eng. 793 [Moak's Notes]; *St. John* v. *Erie R. Co.*, 10 Blatchf. C. C. 271; affirmed, 22 Wall. 136.) The right of the party suing for these arrears is not affected by the fact that he is a holder of the shares by purchase, nearer or more remote, instead of being the original subscriber for the stock, and the original holder of the certificate. (*Bagshaw* v. *Eastern Union R. Co.*, 7 Hare, 114; *S. C.*, 13 Jur. 602; 27 Eng. Ch. 114; 2 McN. & G. 389; *S. C.*, 2 Hall & Twell. 201; 14 Jur. 491; *Westchester & Phil. R. R. Co.* v. *Jackson*, 77 Penn. St. 321.) The objection that the consolidation of the railroad companies of different States to form the present defendant could only be effected or made under and by virtue of an act or acts of the Congress of the United States, and not of the different States thereof, is wholly untenable. (*Farnum* v. *Blackstone Canal Co.*, 1 Sumn. 48; *The Racine & Mississippi R. R. Co.* v. *Farmers' Loan & Trust Co.*, 49 Ill. 331; 9 Am. L. Reg. 260; *P., W. & B. R. R. Co.* v. *Maryland*, 10 How. 376, 392; *Ohio & Miss. R. R. Co.* v. *Wheeler*, 1 Black, 297; *Milnor* v. *The N. Y. & N. H. R. R. Co.*, 53 N. Y. 363; *Philadelphia, W. & B. R. R. Co.*

v. *Maryland*, 10 How. 376, 392; *P., W. & B. R. R. Co.* v. *Howard*, 13 How. 307, 322, 323; *Clearwater* v. *Meredith*, 1 Wall. 25, 40; *Peck* v. *Chicago & N. W. R. R. Co.*, 4 Otto, 164; *Shields* v. *State of Ohio*, 26 Ohio St. 86; 5 Otto, 319; *State of Ohio* v. *Sherman*, 22 Ohio St. 411; *Prouty* v. *L. S. & M. S. R. Co.*, 52 N. Y. 363; *Matter of Sage, etc.*, 70 id. 220; *Bishop* v. *Brainard*, 28 Conn. 289; *Platt* v. *N. Y. & Boston R. R. Co.*, 26 id. 514; 57 How. Pr. 26; *Sturges* v. *Crowninshield*, 4 Wheat. 122, 191; *Ogden* v. *Saunders*, 12 id. 213; 1 Kent's Com. 388. The statute of limitations does not bar the present action. (*Olcott* v. *Tioga R. R. Co.*, 20 N. Y. 210; *Thompson* v. *Tioga R. R. Co.*, 36 Barb. 79; *Rathbun* v. *Northern Cent. R. Co.*, 50 N. Y. 656.) The case presented by the plaintiffs is one of equitable cognizance, and the plaintiffs' remedy is not merely at law. (*Stevenson* v. *Buxton*, 15 Abb. 352; *Coey* v. *Belfast & County Down R. Co.*, I. R., 2 Ch. 112, 123.) The stockholder was entitled to interest on the dividends he was to have received; at least, from the time the net earnings began to be appropriated by the corporation to the payment of dividends to the holders of common stock. (1 Hun, 667; *Conn. Mut. F. Ins. Co.* v. *Cleveland, etc., R. R. Co.*, 44 Barb. 9; *Hollingsworth* v. *City of Detroit*, 3 McLean, 472.) Every purchaser and holder of scrip for shares of the stock and of the shares evidenced thereby became entitled to and invested with all the rights, privileges and benefits attached thereto, or held or owned by the original subscribers for the stock, and all the intermediate holders, down to the time when the same became vested in such purchaser. (*Bagshaw* v. *East. Union R. Co.*, 2 McN. & Gor. 389; *S. C.*, 2 Hall & Twell. 201; 14 Jurist, 491; 7 Hare, 114, and 27 Eng. Ch. 114; 13 Jur. 602; *Jones* v. *Terre Haute R. Co.*, 29 Barb. 353; *Phelps* v. *Farmers' Bk.*, 26 Conn. 269; *Westchester & Phil. R. R. Co.* v. *Jackson*, 77 Penn. St. 321; Angell & Ames on Corporations [10th ed.], § 567, note *a*.)

MILLER, J. The plaintiffs seek by this action to compel the defendant to pay dividends of ten per cent per annum from

June, 1857, to February, 1863, upon certain shares of stock owned by the plaintiffs' testator, which were issued as preferred and guaranteed stock by The Michigan Southern and Northern Indiana Railroad Company, in the year 1857. The issue of stock amounted to $3,000,000 and the company failed to pay the dividends now sought to be recovered. The defendant, under acts of consolidation passed by the legislatures of the States through which the roads ran, assumed the debts and obligations of said company. The certificate of said stock issued by the company and stated as follows: "Said stock is entitled to dividends at the rate of ten per cent per annum, payable semi-annually in New York, on the first days of June and December in each year, out of the net earnings of the said company; and is also entitled to share *pro rata* with the other stock of the company in any excess of earnings over ten per cent per annum, and the payment of dividends as aforesaid is hereby guaranteed." At the top of the certificate after the designation of the name of the company, the number of scrip and the number of shares, was inserted the words, "guaranteed ten per cent stock." None of the dividends provided for were paid until 1863, when a dividend of five per cent, out of the net earnings of the previous six months, was for the first time declared, and no payment has been made upon the arrears of dividends which have accumulated upon said stock.

Objections were made upon the trial to the introduction of the book of minutes of the company, containing certain resolutions of the directors of The Michigan Southern and Northern Indiana Railroad Company, which authorized the issue of guaranteed stock of the company to be denominated "construction stock," and the payment of dividends upon the same at the rate of ten per cent per annum. The objection to these resolutions and proceedings is based mainly upon the ground that all proceedings prior to the issuing of the certificate became merged in the same, and such certificate became the contract between the company and the stockholders, which could not be varied by the other testimony. The resolution of the

directors declared that the dividends at the rate named "shall always be paid upon said guaranteed stock out of any net earnings of the company, before any portion of said net earnings shall be applied to the payment of dividends upon the remaining stock of the company," and the book of minutes, containing this and other proceedings relating to the matter, was offered in evidence for the purpose of showing authority for the issue of the stock in question. Such evidence is frequently resorted to in cases relating to the power to create preferred or guaranteed stock, or the right to receive dividends upon the same. (*Stevens* v. *South Devon. R. R. Co.*, 9 Hare, 313; 21 L. J. Ch. Rep. [N. S.] 816; 12 Eng. L. & E. 229; *Sturge* v. *E. U. R. R. Co.*, 7 DeGex, McN. & G. 158; 31 Eng. L. & Eq. 406; *Crawford* v. *N. E. R. R. Co.*, 3 Jur. [N. S.] part 1, 1093; *Henry* v. *G. N. R. R. Co.*, id. 1117, 1133; *Matthaur* v. *G. N. E. R. R. Co.*, 5 id., part 1, 284; *Corey* v. *Londonderry & E. R. R. Co.*, 29 Beav. 263; *Harrison* v. *Mexican R. L. Co.*, L. R., 19 Eq. Cas. 358; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159.) In the case last cited, the charter, by-law and resolutions of stockholders, and other evidence of a similar character, were received without any apparent objection, and are referred to in the opinion in connection with the certificate. The stock certificate, although on its face in due form, may be the subject of inquiry to ascertain whether it was fraudulently issued. (*Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 599.) In fact the certificate of itself is merely evidence tending to show the ownership of the shares. (*Bates* v. *A. & K. R. R. Co.*, 49 Me. 491.) The resolutions, the book of minutes, annual reports and other proceedings were competent, for the purpose of showing the real character of the transaction and as a part of the same.

The claim of the defendant is, that the certificate of itself did not give a preference, and that the guaranty only authorized the dividend described in the certificate, and that it was error to admit such evidence for the purpose of changing, varying or interpreting the contract. We think that the whole

proceeding relating to the issue of the stock may be taken in connection as constituting one and an entire transaction. The resolutions were competent evidence to show authority to issue the stock; the proposal and other proceedings to carry out the purpose of the resolutions and the certificate as evidence of what stock was actually issued, and in part the terms upon which it was so issued. Altogether these papers evince what the intention was. Without the certificate, the shareholder would be entitled to the shares which had been paid for, and the dividends and the certificate did not circumscribe or limit his rights in this respect, but render them more definite and specific. We think, therefore, that the evidence objected to cannot be considered as extrinsic evidence to vary, modify or explain the written contract, or any uncertainty or ambiguity relating to such contract. We are referred by the appellant's counsel to several reported cases which uphold the doctrine that where there is an uncertainty of meaning upon the face of the contract, owing to its wording, and not to any collateral circumstances, other evidence is not competent. (See *Miller* v. *Travers*, 8 Bing. 244; *Sanderson* v. *Piper*, 5 Bing. N. C. 425; *Reed* v. *Proprietor of Locks*, 8 How. [U. S.] 274; *Sargent* v. *Adams*, 3 Gray, 72.) These decisions relate to the construction of a particular instrument alone, and not to a case where stock is issued by a corporate body, and the circumstances, as well as the nature of the contract, and the acts and proceedings connected with such issue, are to be taken into consideration. The cases cited, therefore, are not analogous.

Assuming, however, that any doubt may arise as to the competency of the evidence, we are of the opinion that, from the language of the certificate and the guaranty, the plaintiffs were entitled to the dividends. By the certificate alone the intestate was entitled to dividends at the rate of ten per cent per annum, payable semi-annually out of the net earnings of the company, and it is agreed by the guaranty that these dividends shall be paid as provided. The contract is explicit as to the amount and the source out of which the dividends shall be paid, and the times when payable annually are also designated. The

design evidently was that the stockholders should realize ten per cent each year, payable semi-annually upon the investment actually made. As they were entitled to receive such dividends from the net earnings and to have ten per cent upon the investment, and this was absolutely guaranteed, it necessarily follows that in the event that such earnings should not reach that amount or at any time failed, the dividends must afterward be paid from the net earnings when earned and received by the company. The reasonable and fair interpretation of the contract is, that the dividends were not only to be preferred, but, being guaranteed, were cumulative and a specific charge upon the accruing profits, to be paid as arrears, before any other dividends were divided upon the common stock. The doctrine that preference shareholders are entitled to be first paid the amount of dividends guaranteed, and of all arrears of dividends or interest before the other shareholders are entitled to receive any thing, and although they can receive no profits where none are earned, yet as soon as there are any profits to divide they are entitled to the same, is fully supported by authority. In *Henry* v. *G. N. R. R. Co.*, 3 Jurist [N. S.], part 1, 1117, affirmed upon appeal, reported in 3 Jurist, 1133, the right of preference rather than that of guaranteed stockholders to dividends in arrears was involved, and it was held by the Vice-Chancellor that the company had no right to declare a dividend so as to affect the right of preference stockholders, and that they were entitled to their full dividend for the period which had elapsed since the last payment of dividend, before the ordinary stockholder can take any dividend whatever. Upon appeal the decision was affirmed, and it was held that preference shareholders had a right to dividends at the stipulated rate chargeable exclusively as profits, and payable before any thing is divided among the common shareholders. The Lord Chancellor, CRANWORTH, says: "That if, on the declaration of a dividend, the fund to be divided should be insufficient to satisfy the claims of the shareholders entitled to preference, those shareholders will be entitled to be paid in full out of all subsequent dividends before the ordinary share-

holders can receive any thing." In the case last cited there were four classes of preferred stock, and the same principle is involved as arises in the case at bar. In *Crawford* v. *N. E. R. R. Co.*, 3 Jurist [N. S.], part 1, 1093, preference dividends were held to be a charge upon the profits of the company for all time, to the extent of the preference dividend held out as payable on the preference shares. The condition here was, that the preference shares should be entitled to a certain rate per annum for the periods named, and in part in perpetuity thereafter on the amount actually paid in. It was said that the words " interest " and " dividends " should be treated as synonymous. See, also, *Sturge* v. *E. N. R. R. Co.* (31 Eng. L. & Eq. 406) which decides that the holders of preference shares are entitled to be paid the amount of arrears out of any money belonging to the company applicable to such payment, before any payment shall be made by the company, to the ordinary shareholders in respect to dividends or interest. It is claimed that in the last two cases it was held that the preference dividends were a charge, because the contract was not for the payment of dividends at fixed times, but because the dividends were payable out of the revenues of the company at any time ; but we think that those decisions were not made upon any such ground, but upon the principle that preference dividends must be paid before any others, which is well established and supported by the cases cited, as well as numerous other authorities. (See Lindley on Part. [4th ed.] 796, 798; *Stevens* v. *South Devon R. R. Co.*, 9 Hare, 313; 12 Eng. L. & Eq. 229 ; *Matthews* v. *G. N. R. R. Co.*, 5 Jurist [N. S.], part 1, 284; *Corey* v. *L. & E. R. R. Co.*, 29 Beav. 263; *Harrison* v. *Mexican R. R. Co.*, 19 Eq. Cas. 358.)

Even if there was a variation, as claimed, we are unable to perceive how this can make any difference; for, as we have seen, the stock being both preferred and guaranteed, the inference to be drawn from the nature of the obligation is certainly very strong upon the certificate itself, and, we may add, conclusive that a specific sum should be paid as dividends out of

the net earnings every year, and, if there were none, as soon as received, as was the evident design of the issue of stock.

The position of the defendant's counsel, that the clauses in the certificate as to the net earnings and the time when the dividends are to be paid limit the contract, and that the holder is only entitled to dividends " out of the net earnings, if there are any at the times specified for the payment of the dividends, and if not, he is not entitled to any, therefore, would be adverse to the obvious design of the company in the issue of the preferred stock, and cannot, we think, be maintained. The statement of the days when the dividends shall be payable was not the essence of the contract, but merely the designation of times when the owner had the right to receive the dividend. The substance and effect of the language employed is that these dividends should be paid out of the net earnings at a certain rate per annum, and the times designated for such payment were merely named to carry out the purpose of paying annual dividends. If no times had been designated, the right to the dividends would have been clear and unquestionable out of the net proceeds, within the cases relied upon by the respondent's counsel, and it does not affect, impair or destroy that right, because the days were especially enumerated. The guaranty in the certificate is also entitled to great weight in the interpretation of the contract and may fairly be construed as an agreement that the dividends shall be paid out of the net earnings which are made chargeable, and the guaranty is an engagement that they shall be applied for a particular purpose, in preference to or priority over common and less favored stockholders. (*Williston* v. *M. S. & N. I. R. R. Co.*, 13 Allen, 404.) We think it is quite obvious that the rights of the plaintiffs do not rest upon the certificate alone, and the resolution cited must be considered as a part of the arrangement, and having this in view, it is beyond any question that the preferred stockholder was entitled to dividends out of any net earnings of the company before the payment of dividends to the common stockholder.

The finding that the shares of stock upon which the plaint-

iffs sue were a portion of the three million issue of 1857, upon which no dividends had been paid, is, we think, supported by the testimony. The judge found that the certificate was the only proof of plaintiff's ownership of a title to the stock, and there was no proof of the circumstances under which the plaintiff became owner, except the certificate from whence he derived title. The plaintiff proved that he held a certificate of the stock; that dividends were not paid, and as the certificate shows, that the stock was to pay a dividend of ten per cent, and there is no proof of any other stock of this description, every presumption is favorable to the theory that the stock was a part of the three million, and that the plaintiff was the lawful owner of the same.

There is, we think, no valid ground for the position of the counsel for the appellant, that the court erred in giving the plaintiffs judgment for the amount of dividends unpaid during the intervening period from 1857 to 1863, in view of the fact that the plaintiffs' testator did not become owner of the stock until 1862, and the findings upon which the judgment was based. The rule is, no doubt, that a shareholder in a corporation has no legal title to the property or profits of the corporation until a division is made or a dividend declared. When this is done, the dividend belongs to the owner of the share at the time, and until the dividend is declared, it is a portion of the assets of the corporation, and an assignment of the stock carries with it its proportionate share of such assets, which necessarily include as an incident all undeclared dividends. These are the subject of assignment, and pass with the transfer of the stock as a portion of the capital of the company. (*Hyatt v. Allen*, 56 N. Y. 553.) It follows that upon the transfer of the stock of the plaintiffs' testator to him, the assignment carried with it all right to the earnings or profits or claims to dividends, which ordinarily and lawfully was embraced within the scope of such a transfer, unless the facts accompanying the transfer render the case at bar an exceptional one and not within the general rule. Such is urged to be the fact by the appellant's counsel, and it is insisted that the company

made a contract to pay certain dividends upon a contingency, which was the acquisition of net earnings by the company, and the right only becomes complete upon the happening of such contingency, and that the holder of the stock with whom the contract was made would become a creditor upon the acquisition of such net earnings, and that the plaintiffs cannot claim these dividends in their capacity as stockholders, for they have never been declared but only in the capacity of one who has made a contract with a corporate body. We are unable to perceive the force of this position, for conceding that the right of the plaintiffs depends upon a contract, that contract is connected with, relates to and constitutes an integral part of the plaintiffs' right as a stockholder. It cannot be separated from the rights accruing by virtue of the stock which the plaintiffs hold; and being thus a part and parcel of the same, it passes with the transfer as one of its incidents, and as composing an essential element thereof. A sale or assignment of the stock transferred by the operation of law all benefits to be derived from the same, and all profits, income or dividends or right to dividends by contract, which formed a constituent, valuable and an inseparable portion of the stock. When the contingency happened specified in the contract, the right to dividends became fixed, and existed independent of any act of the corporation or its officers. It became absolute and perfect in the stockholder without a declaration to that effect, and passed as an incident of the stock upon the transfer.

The dividends were not a chose in action arising from the contract, which could only be derived by a separate assignment, and no such instrument was required to convey or transfer a right to the same. Although usually there is no special contract of the company with the holders of stock to declare dividends, yet that does not alter or change the effect of the contract by which the plaintiffs hold their stock and become entitled to dividends thereon; for in both cases the dividends follow the stock itself and belong to the owner. We think it cannot be maintained, upon any sound principle, that the contract for the payment of dividends continues to each stock-

holder only during the time he holds the stock and accrues only to his benefit during that period, and that a separate and distinct assignment of the dividends was essential in order to confer title upon the owner. Such a conclusion is adverse to the general rule which is upheld by authority, that a transfer of stock of a corporation carries with it to the transferee its proportionate share of the assets of the company, including dividends which have not been declared, and all the incidents and advantages which appertain to the rights of a shareholder. The case of *Hill* v. *The Newitchawanic Co.* (8 Hun, 459), affirmed in this court in 71 N. Y. 593, on appeal, which is relied upon by the appellant's counsel, is not analogous, as the dividend of previous earnings had virtually been declared before the sale, although the time of payment was not fixed, but was left discretionary with the agent. A distinction is recognized in the opinion between a dividend already declared, payable at a future day, and a division of future earnings; and it was properly held that the former owner, and not the purchaser, was entitled to the dividend.

We think there was no error in the judgment of the trial court because it decrees specific performance and grants equitable relief. The cause of action is of an equitable character, and the remedy demanded cannot be obtained by an action at law. It is not to recover the dividends alone, but to compel the defendant to do what is necessary and proper for the specific performance of the contract and agreement entered into by the Michigan Southern and Northern Indiana Railroad Company, in reference to the guaranteed or construction stock issued by it. The plaintiffs pray that an account be taken, that the defendant be compelled specifically to perform the agreement and enjoined from declaring or paying any dividends upon the common or unpreferred stock of the corporation, until the holders of the guaranteed or construction stock are all paid. Without some action of the officers of the corporation, there is no power to pay the dividends; and as they are to be paid out of the net earnings, this cannot be attained in any other manner.

The English cases already cited (*supra*), where the Court of Chancery interfered to restrain the payment of dividends to shareholders of a lower class until the arrears due those of a higher were paid, were all equitable actions. In the only case excepted from this general rule, the right of recovery depended upon an act of Parliament, and there had been an appropriation of the money. (*Coey* v. *Belfast & County Down R. R. Co.* 2 Irish [C. L. S.], 112.)

While, as a general rule, courts of equity will not exercise visitorial powers over corporations, and its officers are the sole judges as to the propriety of declaring dividends, and in this respect the court will not interfere with a proper exercise of their discretion, yet where the right to the dividend is clear and fixed by the contract, and requires the directors to take action before it can be asserted by a suit at law, and a restraint by injunction is essential to maintain the right of the stockholder, the interposition of a court of equity is a proper exercise of its power and should be upheld. In such a case the remedy at law is inadequate, and a court of equity alone can grant the proper relief. In regard to the controversy involved in this action, it is apparent that it is not one of legal cognizance, and a perfect remedy can only be obtained by an equitable action. The judgment here requires a specific performance of the contract, and such relief could not be obtained by an action to recover the dividends.

We are also of the opinion that the liability of the defendant, as the representative of the consolidated corporation and as a corporate body, is sufficiently established, and that it cannot be claimed that the defendant is in the nature of a firm and cannot be sued alone. Upon the trial, it was admitted that the defendant was a corporation duly created and organized as a corporate body, under the laws of several States, and when the defendant's corporation was formed, the several corporations which were consolidated to form the defendant owned and operated one continuous line of railroad running through the several States named; and that the defendant would not question its own corporate existence or that of the several corporations from

which it was formed.    The defendant is a corporation *de facto*. It filed its agreement and acts of consolidation with the secretary of State, a copy of which, duly certified, is made evidence in all courts (Laws of 1869, chap. 917, § 2, subd. 2), and was introduced in evidence upon the trial, as well as the laws of other States, and those together appear to establish sufficiently the existence of defendant *de jure* as a corporate body.    It is also recognized as a corporation in several of the decisions of this court, and the validity of the consolidation is considered and affirmed.    It is held that where two railroads are consolidated, as far as one of the creditors of one of the original companies is concerned, the consolidated company is the successor of the old company; but in respect to the properties of the other companies it is a new and independent company, and such creditor has no claim against it upon their original contract, but only by virtue of its assumption of the obligations of the old companies.  (*Prouty* v. *L. S. & M. S. R. R. Co.*, 52 N. Y. 363.)    The distinct point was taken, in the case last cited, that the consolidation was not a surrender of personal identity or corporate existence by either of the corporations. (See, also, *Chase* v. *Vanderbilt*, 62 N. Y. 307 ; *In the Matter of Sage*, 70 id. 220.)

We have carefully examined the cases cited to sustain the position contended for, but none of them present the characteristic features which distinguish the case at bar, or hold that under the facts and circumstances presented upon the trial of this action the defendant could not be sued as a single corporation, and is not liable as such.    Nor are we able to discover any effect of the principle laid down which is not the legitimate result and the necessary consequence of the arrangement under which the consolidation of the various corporations was accomplished and became merged in the defendant.    The effect of the consolidation evidently was that the preferred stock should constitute a part of the liability, and no reason exists why the stockholders should be compelled to prosecute their remedy against one of the corporations alone with whom the contract was originally made.

The claim that the plaintiffs have been guilty of negligence and laches in asserting their right, and have so long acquiesced in the manner of distributing the funds and property of the company that it is too late to complain, and that the doctrine of an estoppel *in pais* applies, demands serious consideration. The question is, whether the delay in bringing the action precludes a recovery, under the circumstances presented. The defendant's obligation arises upon a contract, and the right to the dividends became fixed thereby, the same as the payment of any other demand which is provided for by the terms of an agreement. The failure to pay makes the right of action perfect, and under ordinary circumstances this can only be defeated by the statute of limitations. But was there such an acquiescence in the acts of the defendant, such laches and failure to proceed and claim the dividends by the plaintiffs or their testator, as in any way operated upon or induced the defendant to act differently from what it otherwise would have done, or as injured or affected its interests? The principle applicable to such case is laid down by Lord Denman, in *Pickard* v. *Sears* (6 Ad. & El. 474), as follows: "The rule of law is clear that where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." Nor is it essential to an equitable estoppel that the party should design to mislead, and it is sufficient if his acts were calculated to mislead and have misled another acting upon it in good faith and exercising reasonable care. (*Manuf. Bank* v. *Hazzard*, 30 N. Y. 226.) Within the rule stated, can it be said that the defendant was misled by the conduct of the plaintiffs, and that thereby it was induced to act differently than it otherwise would have done, or to change its former position? A recurrence to the facts disclosed upon the trial evinces that the action of the defendant was not based at all upon the apparent acquiescence of the plaintiffs in its neglect to pay the dividends. It appears that

there has been, ever since the expiration of the time when the dividends were due, an active and continuous litigation, and a sharp controversy in the courts with other parties against the old corporation and the defendant, by stockholders who are similarly situated with the plaintiffs, to recover dividends upon the preferred stock. Some of the annual reports introduced in evidence upon the trial contain references to the pendency of these actions for the arrears of dividends, and show clearly and beyond any controversy that the defendant was well-advised and had full knowledge of the claim of the preferred stockholders. The pleadings, affidavit for injunction, and the injunction issued in one of the suits brought, in which the defendant was restrained from receiving funds from the old corporation and otherwise enjoined, which was also proved, show conclusively the existence of these litigations and bring the knowledge of the same directly to the defendant's officers. The defendant necessarily was acquainted with the character of the litigation, with the questions involved and the claim of the preferred stockholders to the dividends; and in the face of these facts, with full notice of the nature of the claim, has no ground for insisting that it would have acted otherwise if the plaintiffs had sued at an early day. It was not required that each particular stockholder should sue for his share of the dividends to preclude the defendant from claiming an acquiescence and estoppel; and it is quite sufficient that it was advised of the character of the claim of the respective stockholders. The plaintiffs and other stockholders were entirely justified in awaiting the result of suits pending without incurring the hazard of losing their rights on account of the lateness of their demand. A right of action existed in favor of the stockholders against the corporation, which continues against the defendant, who has assumed and is bound to pay its debts and obligations, which right has not been lost by delay, acquiescence or laches. The defendant has in fact acted without regard to these stockholders' interests and diverted funds to which the plaintiffs were entitled, with full knowledge of the facts and without being misled or deceived by any misconduct

or any want of action on their part. The doctrine of estoppel or of acquiescence has no application in such a case, and cannot be invoked to aid the defendant. The elements of an estoppel are wanting, as there has been no mistake or misleading, nor any injury arising from the delay in bringing an action. It cannot be urged upon any valid ground that the conduct of the defendant in reference to these dividends was in any respect influenced or affected by the plaintiffs' delay to sue, or that it labored under any misapprehension, or was ignorant of or had not complete knowledge of the nature of the plaintiffs' claim.

We have examined the cases cited in this connection by the appellant's counsel, and none of them sustain the position that where the circumstances indicate a full knowledge of the facts in regard to a claim which may be made, and where the party was advised, by the presentation of claims of other parties, of a like character, which were the subject of litigation, that the doctrine of laches and acquiescence can be invoked as a defense. In each of these decisions there was strong and direct evidence to establish acquiescence in the action which had been taken, and the parties were suffered to proceed without notice, so as to warrant the conclusion that the subsequent claimants assented to what was done, and thus ratified the action taken. (See *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 184; *Coles* v. *Bank of England*, 10 Ad. & El. 437; *Pickard* v. *Sears, supra*; *Prendergast* v. *Turton*, 1 Younge & Col. 98; *Stafford* v. *Stafford*, 1 DeG. & J. 193; *Nichols* v. *Leeson*, 3 Atk. 573; *Currie* v. *Goold*, 2 Mad. Ch. 426; *Matthews* v. *G. N. R. R. Co.*, 5 Jurist [N. S.], part 1, 284, 290.) We do not deem it necessary to consider these cases more fully, and it will be found that none of them are adverse to the views we have expressed.

We are also of opinion that the plaintiff's demand is not barred by the statute of limitations. The claim arose originally against a foreign corporation, and the action is based upon the assumption by the defendant of its debts and liabilities under the articles of consolidation, which, by an act of the legislature

and the filing of the articles in the office of the Secretary of State, took effect in 1869. A foreign corporation sued in this State cannot avail itself of the statute of limitations. (*Olcott* v. *The Tioga R. R. Co.*, 20 N. Y. 210; *Thompson* v. *The Tioga R. R. Co.*, 36 Barb. 79.) And this rule obtains, although it has before the commencement of the action for the time specified in the statute continuously operated and carried on a railroad in this State, and has property and officers therein. (*Rathbun* v. *N. C. R. R. Co.*, 50 N. Y. 656.) The statutory time for bringing the suit, if it can be regarded as in any sense applicable, would not begin to run until the date of the consolidation, and the action was brought within six years after that period.

There is, we think, no force in the position that the acts of the legislatures of the several States through which the railroads run, so far as they relate to or authorize the consolidation in the adjoining States, are in violation of subdivision 3 of section 8 of the first article of the Constitution of the United States, which confers upon Congress the power to "regulate commerce with foreign nations and among the several States." It is not claimed that Congress has legislated in respect to the subject, or assumed to exercise the power conferred by the Constitution, and it has not yet been decided that the provision cited requires that the power conferred should be exercised by Congress alone, and is taken away entirely from the control of the State legislatures. The conclusion, therefore, is inevitable that in the absence of such legislation by Congress, the power exists in the State to legislate upon the subject. It is not the power itself, but its exercise, which is inconsistent with the exercise of the same power by the State legislature. It is the establishment of such laws by Congress as are inconsistent with the laws of the State, and not the right to establish a uniform system. While, then, Congress has the power to establish uniform laws on the subject of bankruptcy, this does not exclude the right of the State to legislate on the subject, except where the power is actually exercised by Congress and the State laws conflict with those of Congress.

(*Ogden* v. *Saunders*, 12 Wheat. 213; *Sturges* v. *Croninshield*, 4 id. 122, 191; 1 Kent's Com. 388.) The same rule applies to the legislation which has been considered. The case of *Munn* v. *Illinois* (94 U. S. 113) is cited by the appellant's counsel; and it is there held where warehouses are situated within a State, it may prescribe regulations for them, notwithstanding they are used as instruments by those engaged in inter-State, as well as in State commerce; and until Congress acts in reference to their inter-State relations, such regulations may be enforced, even though they may indirectly operate upon commerce beyond her immediate jurisdiction; and such a law is not repugnant to the Constitution. We are unable to discover any thing in the case cited which conflicts with the right of the States to pass the laws referred to in regard to the consolidation of the railroads in question, and within this decision, as well as the authorities cited, we are brought to the conclusion that the acts in question were constitutional and valid.

We have examined the various objections taken to the findings and the refusals to find, and the rulings in regard to the evidence upon the trial, and none of the decisions of the court were erroneous in respect to the same. The motion to dismiss the complaint and for judgment was also properly denied. Nor was there any error in the allowance of interest upon the dividends.

The judgment should be affirmed.

All concur, except Rapallo and Andrews, JJ., taking no part.

Judgment affirmed.

---

Upon a motion for a reargument in this and other similar cases decided with it, the following opinion was handed down.

Miller, J. The motion for a reargument in these cases is founded upon the ground that the appellant's counsel omitted to discuss the question as to the legality of allowing interest

upon the dividends, and that several decisions and authorities upon that question were not cited upon the brief of the appellant's counsel and the attention of the court was not drawn to the same. The position of the defendant's counsel is, that the ten per cent dividends which were to be paid by the contract and certificate upon the new stock issued were in the nature of interest and given as an inducement to the parties subscribing to advance this necessary amount of money to pay certain obligations of the corporation in a period of emergency and that the allowance of interest thereon in point of fact would be interest upon interest, or compound interest which is unauthorized by law, and which is never allowed except in case of an express agreement to that effect. The general rule is well established that compound interest cannot be recovered by law without an agreement to pay the same entered into after it has become due. (*State of Connecticut* v. *Jackson,* 1 Johns. Ch. 13 ; *Ackerman* v. *Emmott,* 4 Barb. 649.)

Under ordinary circumstances interest is not recoverable upon dividends declared without a previous demand and a refusal to pay, and the question arises whether the rule stated is applicable under the state of facts presented in the case at bar. Under the resolutions of the stockholders and board of directors of the Michigan Southern and Northern Indiana Railroad Company the stock proposed to be issued was to be guaranteed and preferred, and certificates were issued to that effect, by which the dividends were to be paid semi-annually out of the net earnings of the company before any portion should be applied to the payment of dividends upon the remaining stock. Upon the 28th of February, 1865, the guaranteed stock had been reduced by purchase, cancellation and otherwise and a surplus remained of $743,000, which could have been applied to the payment of the arrears of the dividends of the stock in question, including that of the plaintiff. On the 1st of August, 1864, the directors in open violation of their agreement declared and paid a dividend upon the common stock of $277,664.20, and in March, 1865, a like dividend. These amounts were sufficient to pay all arrears of dividends on guar-

anteed stock which were outstanding at the time this action was brought. Other sums were afterward paid for dividends upon the common stock in violation of the rights of the holders of guaranteed and preferred stock. These moneys, which should have been appropriated to the payment of the dividends due the preferred stockholders, were thus unlawfully diverted from that purpose. The security taken for the money advanced was not in the nature of an obligation for the repayment of money alone, nor the benefits or payments to be derived therefrom were not in substance or in effect interest upon money loaned merely, and therefore did not bear the character of ordinary obligations where the allowance of interest would be compounding the same, which the courts have regarded with disfavor and as unauthorized. The preferred stockholders merely obtained thereby an interest in the assets of the company which entitled them to the ordinary dividends the same as the common stockholders. The agreement to pay preferred or guaranteed dividends was an inducement to take the stock, and the dividends provided for were the only return for the moneys advanced. The security therefore taken differs from an annuity or ordinary dividend or an agreement to pay interest. This rule should more especially prevail where the sums to be paid were allowed only from time to time out of the net earnings which ought to have been applied and were wrongfully appropriated to the payment of dividends to the common stockholders who were not entitled to the same before the others were paid. By this illegal appropriation the common stockholders received dividends and if they chose could have invested the same and thus drawn interest thereon, while the preferred stockholders have no such advantage. Having thus misappropriated the funds out of which the interest was to be paid to the preferred stockholders, the company should be compelled to pay interest on the sums which their own act prevented from being paid. They refused to fulfill the contract or to do what was required by law to pay the plaintiff the dividend to which he was entitled, and compelled him to bring an action to enforce the declaration of divi-

dends and under these circumstances have no claim to be exempted from the payment of interest as damages as a consequence of their failure to perform a plain obligation. The plaintiff became damnified by the refusal of the company to declare a dividend when they had funds for that purpose and by the diversion of such funds his right to interest accrued by being compelled to institute an action to enforce the same. It may also be remarked that there were no specific dividends to demand until they had been declared, and hence the demand would have been unavailable and the case differs entirely from one where dividends have been declared or an annuity has been received or where money has been appropriated or received for such a purpose and nothing remains to be done except to pay it over when demanded by the person who is entitled to receive the same. Nor does it interfere with the right of the plaintiff to interest on dividends because this is an equitable action, for as no dividends had been declared and the plaintiff's remedy in part was to compel the officers of the company to declare such dividends, no other action could properly be brought in which adequate relief could be obtained. It is enough, we think, that the plaintiff's right to the interest exists to authorize the court to enforce his claim in this action.

The plaintiff's case bears no analogy to that of copartnerships when one of the partners is not entitled to interest as against the others. Nor is there any such laches in enforcing the plaintiff's demand, or by a failure to make a demand, or by bringing a suit at an earlier period as estops him from claiming such interest.

The learned counsel for the appellant has cited several English authorities where the courts have refused to allow interest to annuitants upon the arrears of an annuity although there were circumstances which before induced the courts to allow it. (*Aylmer* v. *Aylmer*, 1 Malloy, 87; *Anderson* v. *Dwyer*, 1 Schoales & Lefroy, 301; *Booth* v. *Lycester*, 3 Mylne & Craig, 459; *Earl of Mansfield* v. *Ogle*, 4 De G. & J. 38; *Torre* v. *Brown*, 5 House of Lords Cases, part 1, 555; *Booth* v. *Coulton*, 7 Jurist [N. S.], part 1, 207; *Jenkins* v. *Bryant*,

16 Simons, 272.) We have given to these cases the most careful consideration and they appear to establish a practice in the English courts to refuse interest upon annuities except under special circumstances, and one of these (3 Mylne & Craig, 459) appears to have been decided upon a question of intention. The rule seems to have been of modern origin, for the earlier cases are not entirely in the same direction. (*Litton* v. *Litton,* 1 P. Wms. 541; *Ferrers* v. *Ferrers,* Talbot's Cases, 2; *Robinson* v. *Cumming,* 2 Atk. 579; *Drapers' Co.* v. *Davis,* id. 211; *Morris* v. *Dillingham,* 2 Ves. Sr. 170; *Morgan* v. *Morgan,* 2 Dick. 643.) Assuming, however, that the modern decisions are controlling, cases of this kind are not in point when the claim to interest rests upon an unlawful appropriation of moneys which were properly applicable to the payment of arrears of dividends as is the case here. And where the party who is bound to pay is in fault and diverts or fails to apply the money in his hands for the purpose of paying dividends which are legally due, the rule laid down as to annuitants cannot shield it from the consequences of the default. Such party is not exonerated for the apparent reason that he was lawfully bound to pay and could pay, had he chosen to do so, and utterly failed and neglected to perform this conceded duty and obligation.

For the reasons stated, without considering the question as to the right to a reargument, we are of the opinion that the motion should be denied.

All concur.

Motion denied.