## Case No. 12,226.

ST. JOHN v. ERIE RY. CO.

[10 Blatchf. 271.] 1

Circuit Court, S. D. New York. Dec. 19, 1872. 2

RAILROAD COMPANIES—PREFERRED STOCK—MORTGAGES—RIGHTS OF STOCKHOLDERS.

1. A certificate for shares of stock in a railroad corporation declared that such stock should be entitled to preferred dividends, out of the net earnings, not to exceed a specified rate, after payment of mortgage interest in full. After the certificate was issued, the corporation borrowed money and issued bonds therefor bearing interest, and also took leases, on rent, of connecting railroads: *Held*, that the holder of the certificate was not entitled to be paid a dividend, before payment of the interest on such bonds, or of such rent.

[Cited in Nickals v. New York, L. E. & W. R. Co., 15 Fed. 579; New York, L. E. & W. R. Co. v. Nickals, 119 U. S. 308, 7 Sup. Ct. 215.]

[Cited in brief in Chaffee v. Rutland R. Co., 55 Vt. 123.]

2. The meaning of the words, "net earnings," defined.

[Cited in Mobile & O. R. Co. v. Tennessee, 153 U. S. 497. 14 Sup. Ct. 972.]

[Cited in Hazeltine v. Belfast & M. H. L. R. Co., 79 Me. 411, 10 Atl. 331; People v.

---

1 [Reported by Hon. Richard H. Dana, Jr., and here reprinted by permission.]

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Affirmed in 22 Wall. (89 U. S.) 136.]

San Francisco Sav. Union, 72 Cal. 203, 13 Pac. 500.]

[This was a bill in equity by Thomas St. John against the Erie Railway Company to obtain a judgment as to the rights of the stockholders, and to protect them against the alleged wrongful acts of the company.]

Dorman B. Eaton, for plaintiff.
William W. McFarland, for defendants.

BLATCHFORD, District Judge. The plaintiff is the holder of certificates for shares of stock in the Erie Railway Company, which certificates declare him to be entitled to so many shares "in the preferred capital stock" of the company. Each certificate contains these words: "Said stock shall be entitled to preferred dividends, out of the net earnings, if earned in the current year, but not otherwise, not to exceed seven per cent. per annum, payable semi-annually, after payment of mortgage interest of said company in full." This preferred capital stock was issued in pursuance of the terms of a contract entered into, October. 22d, 1859, between the shareholders and the creditors of a prior corporation, known as the New York and Erie Railroad Company. That company had, at the time, failed to pay at maturity certain of the coupons on bonds issued by it and secured by mortgages. and certain of its unsecured debts. Proceedings had been commenced against it, by certain of its mortgage creditors, to enforce the mortgage trust, and a receiver of the property covered by the latest two of the mortgages, (there being five,) had been appointed. The shareholders, the bondholders under all of the mortgages, and the unsecured creditors, then entered into the contract referred to. It contemplated and provided for the formation of a new company, in which such shareholders in the former company should become shareholders, by exchange, to the same extent. It appointed two trustees, who were to purchase the mortgaged property, on a foreclosure sale. for account of the parties to the contract, and obtain possession of the property, displacing the receiver, and then receive its net earnings, and apply them to pay (1) certain floating debt of the old company, not exceeding $320,000 of principal; (2) certain expenditures on the Long Dock property, estimated at $500,000; (3) the "delayed mortgage coupons, in the order of their priority." The mortgages were to continue as mortgages, under the new company. This left to be provided for, the holders of unsecured bonds. By the contract, they agreed to exchange their bonds for preferred stock, equal in amount to the amount of the bonds, and of the overdue coupons, and of the coupons for two years in advance. The contract also provides, that "such preferred stock is to be entitled to preferred dividends out of the net earning, (if earned in the current year, but not otherwise,) not to exceed 7 per cent.

in any one year, payable semi-annually, after payment of mortgage interest and delayed coupons in full;" that the trustees might retain, from "said net earnings," a compensation for their services; and that, in case of a foreclosure, the trustees might assess a contribution to complete the purchase, the amount of such contribution "to be a charge upon the net earnings of the road, to be repaid before the payment of dividends upon the preferred stock, or to be funded, as the board of directors shall determine."

On the 4th of April, 1860, an act was passed by the legislature of New York [Laws 1860, p. 253], providing for the organization of the new company, by the name of the Erie Railway Company, after the sale on the foreclosure, and for the preservation of the mortgage liens. It also provided, that the capital stock of the new company should not exceed the amount of the capital stock of the old company, and of its debt unsecured by mortgage, and that the unsecured and judgment creditors of the old company might receive for their debts preferred stock of the new company.

On the 2d of April, 1861, an act was passed by the legislature of New York [Laws 1861, p. 213], reciting, that the trustees under the contract had purchased the property of the old company, under a decree for the foreclosure of the fifth mortgage. subject to the several mortgages thereon, and providing for the creation of the new corporation. It also provided, that the common capital stock of the new company should not exceed the outstanding capital stock of the old company; that the preferred capital stock of the new company should be equal to the amount of the total unsecured and judgment debt of the old company; that such preferred stock should "be entitled to preferred dividends out of the net earnings of said road, if earned in the current year, but not otherwise, not to exceed seven per cent. in any one year, payable semi-annually, after payment of mortgage interest and delayed coupons in full;" and that the holders thereof might "vote personally or by proxy, at all meetings of the corporation. in the same manner as the holders of common stock, but not otherwise."

On the 30th of April, 1861. the articles of association of the new corporation were entered into, reciting at length the said contract, stating that the preferred capital stock of the new corporation was to be equal to the amount of the total unsecured and judgment debts of the old company, recognizing the liability of the trustees to deliver preferred stock, and ratifying their acts in purchasing the property, and in executing their trust.

The delayed coupons were all of them paid, and the trust was discharged. Preferred stock, to the amount of $8,536,910, was issued by December 31st. 1868. The defendants regularly paid dividends on the prefer-

red stock, until that due for the year 1863, which one they did not pay.

The practical question involved in this case is, whether the holders of the preferred stock are entitled to a seven per cent. dividend annually, before interest is paid by the defendants on one million of pounds of sterling bonds issued by them in 1865, after the preferred stock was created, and before rent is paid by the defendants on any leases taken by them since January 1st, 1862, of roads which they operate in connection with their own.

The earnings of the defendants for the year ending December 31st, 1868, after deducting the ordinary operating expenses, the interest paid on mortgages existing January 1st, 1862, and the rents of roads leased prior to January 1st, 1862, were sufficient to pay a dividend to some amount on said preferred stock. If no interest had been paid by the defendants on said sterling bonds, and no rent for roads, leases of which were taken after January 1st, 1862, such earnings were sufficient to pay a dividend to some amount on said preferred stock. The sterling bonds referred to are unsecured by mortgage, and bear interest at six per cent. per annum, in gold coin. They were issued for money borrowed by the defendants at various times after the issuing of said preferred stock, which money it was necessary for them to borrow to equip and repair their road, and which money was expended for those purposes. The bonds are in the hands of holders for value in good faith. During the year 1868, the defendants necessarily paid interest on said bonds to the amount of $388,-494.65. During the same year, the defendants paid $362,995.35, as the rent, for that year, of roads the leases of which were taken by it after January 1st, 1862.

The prayer of the bill is, that the court will ascertain and adjudge the meaning of the words "net earnings," and to what roads, property, and franchises they relate, and the rights and priorities of the preferred stockholders, and the construction of said contract, statutes, and certificates of stock, and the duty of the defendants in regard to keeping accounts of earnings, and to paying the same, and the order and priority of their payment, and that the defendants be enjoined from applying any portion of their net earnings, after payment of the interest on said mortgage bonds, to any other purpose than the payment of a dividend on said preferred stock.

It is contended, on the part of the plaintiff, that, as the unsecured bondholders to whom the preferred stock was issued, stood, when the contract was made, next in order, as creditors, to the holders of the mortgage bonds, they became entitled to occupy the same relative position as holders of preferred stock, and to receive their dividends on such stock, out of the earnings, before the payment of interest on obligations incurred after the issuing of such stock, and of rents of roads the leases of which were taken after the issuing of such stock; that the words, "after payment of mortgage interest and delayed coupons in full," do not mean, merely, "before any dividend is paid on the common capital stock," but mean, "next after payment of mortgage interest and delayed coupons in full;" that this construction is sensible, because of the prior position of the preferred stockholders as holders of unsecured bonds entitled to be paid interest next after the payment of mortgage interest; that they did not waive, but preserved, their position, as entitled to such interest, and only modified their right in regard to the repayment of the principal of their debts; that the provision in the contract, that the contributions by assessment should be repaid out of the net earnings, before the payment of dividends on the preferred stock, shows that it was not intended that anything should be interposed before the payment of such dividends, except what was specially expressed; that the preferred stock is only a new form of security for the debts in exchange for which it was issued, holding the same place, and entitled to be paid the same interest, as such debts were entitled to when the exchange was made, subject to the proviso as to the earning of the interest in the current year; that the holders of the preferred stock are not subject to the contengencies of new loans and new leases and extended enterprises; that, while the contract contains no limitation on the power of the defendants to take new leases, or to issue interest-bearing securities, it contains a limitation on their power of disposing of their net earnings, of which all persons making such leases, or lending money on such securities, had notice; that the shares of preferred stock are, in fact, perpetual bonds, with no right to the repayment of the principal, but with a specified preferential right in regard to interest; that the fact that it is called "stock," and that it is declared to be entitled to "dividends," and that its holders have an equal right to vote with the holders of the common stock, cannot destroy the rights which appertain to it by the terms of the contract; that separate accounts should be kept of the losses and profits of the several leased roads; and that there must be devoted to the payment of dividends on the preferred stock, the earnings of the line, as it existed when the stock was issued, less the expenses of operating such line, including rents for any part of it, and less the interest on the mortgage debt.

I do not think that a fair and reasonable construction of the contract, with which the language of the statutes, and of the certificates of stock, is in harmony, sustains the views urged on the part of the plaintiff. The words are not, "next after payment of mortgage interest." They are, "after payment of mortgage interest." The contract, in its fifth article, provides that the holders

of the unsecured bonds agree to exchange them for "preferred stock," "to be entitled to preferred dividends out of the net earnings." The only way, mentioned in the contract, in which the stock was to be "preferred stock," was, that it was to be entitled to "preferred dividends." What was that word "preferred" to mean? "Preferred" over what? Were the dividends to be "preferred" over, and to be paid before, the mortgage interest on the five mortgages, so as to become, in fact, by the agreement of the holders of the mortgage bonds, who were parties to the contract, a virtual mortgage on the net earnings, to the extent of such dividends, prior to the lien of the five mortgages? But for some expression of intention, in the contract, on that subject, the mere word "preferred" might be construed so to mean. It otherwise might mean, not merely "preferred," as respected the holders of common stock, but "preferred" as respected the securities held by all other parties to the contract. Therefore, something must be inserted to exclude such an inference, and to secure to the holders of mortgage bonds a priority as to the payment of their delayed coupons, and of their future interest. Such priority was, accordingly, secured, by adding the words, "after payment of mortgage interest and delayed coupons in full." There is nothing to show that the words have any other effect, or were intended to have any other effect. An intention that they should have such effect, which is a reasonable effect, is inferable from the fact that they clearly have such effect, and it is unreasonable to infer any other intention, when that intention is a sufficient reason for inserting them. Without them, there is nothing to give the mortgage interest a priority over the "preferred dividends." In this view, it is impossible to see in them anything except the expression of a priority in favor of the mortgage interest over the "preferred dividends," and impossible to see in them any expression of a priority in favor of the "preferred dividends" over anything.

So, also, in regard to the provision for the repayment of the contributions. It had been before declared that the mortgage interest should have priority over the "preferred dividends." It was now desired to declare that the repayment of the contributions should have priority over the "preferred dividends;" and it was so declared. But, here again, there is nothing declaring a priority of the "preferred dividends" over anything.

The priority of the "preferred dividends" over anything depends wholly on the meaning of the word "preferred." Now, what is it that is entitled to "preferred dividends?" It is "preferred stock." But, such stock is not declared to be anything more than stock entitled to "preferred dividends." In that sense only, is its character as "preferred stock" defined by the contract. What it is entitled to is "dividends," and only "dividends," and they are of a defined and special

character. It is entitled to nothing else. It has no privilege or priority, by reason of being "preferred stock," except in reference to stock that is not so preferred, that is, common stock. In reference to such common stock, the preferred stock is entitled to its specified preferential dividends, and it is not entitled to anything else in reference to anything.

The former holders of the unsecured bonds of the old company, by taking the preferred stock in exchange for their bonds, abandoned their position as creditors, and became merely stockholders in the new company, as against then existing, and all future, creditors of the new company. They acquired the same right to vote as the holders of common stock. In the absence of any expressed intention to the contrary, it would be very unreasonable to suppose that the general power of the defendants to take leases of roads, and pay the rents on them, and to borrow money, and issue bonds therefor, and pay the interest on such bonds, would have been subordinated by the legislature, or by themselves, to the rights of any class of their stockholders, and equally unreasonable to suppose that the claims of creditors would have been postponed to those of stockholders. When to this is added the consideration, that short roads leased, though unprofitable as to their immediate traffic, may increase largely the profits of a long main line which they feed, and that moneys borrowed and expended in renewing and repairing what was the main line when the preferred stock was issued, may go largely to create any net earnings there may be, not only is the impracticability of the views urged on the part of the plaintiff such as to make it most unlikely that anything was done in accordance with such views, but the injustice of postponing the claims of the lenders of such moneys, to be paid their interest out of such net earnings, to the rights of stockholders to dividends therefrom, is too manifest to need remark.

Moreover, the views urged on the part of the plaintiff, if sound, must be carried to their legitimate conclusions. The money has been borrowed on the sterling bonds. Their holders are creditors. If the company should become bankrupt, are the claims of those creditors to be repaid their principal, to be postponed to the claims of the preferred stockholders, in respect to the capital of their shares? Why not, if there is to be such postponement as between interest to the creditors and dividends on the preferred stock? The stock is, in the contract, declared to be "preferred stock" as well as to be entitled to "preferred dividends." The statute and the certificates call it "preferred capital stock." If "preferred stock," why should it not have preference over the principal of subsequently created debts, if dividends on it are to precede the payment of interest on such debts? Yet, such a claim would probably never be

advanced, and certainly would not be admitted.

The statement in the contract, the statute, and the certificates, that the "preferred dividends" are to be paid out of the "net earnings," sheds no light, one way or the other, for a solution of the question. The mortgage interest and the delayed coupons are also to be paid out of the net earnings. Net earnings are, properly, the gross receipts, less the expenses of operating the road to earn such receipts. Interest on debts is paid out of what thus remains, that is, out of the net earnings. Many other liabilities are paid out of the net earnings. When all liabilities are paid, either out of the gross receipts or out of the net earnings, the remainder is the profit of the shareholders, to go towards dividends, which, in that way, are paid out of the net earnings. That this is the meaning of the expression "net earnings," in the contract, is shown by the fact, that the contract states that the trustees are to receive the net earnings, and out of them pay the floating debt, and the delayed coupons, and by the further fact, that the contract, the statute, and the certificates state that the mortgage interest is to be paid out of the net earnings, by stating that the preferred dividends are to be paid out of the net earnings, "after payment," (that is, out of the net earnings,) "of mortgage interest."

It results, from these considerations, that the bill must be dismissed, with costs.

[On appeal to the supreme court, the decree of this court was affirmed. 22 Wall. (89 U. S.) 136.]