NICKALS and others *v.* NEW YORK, L. E. & W. R. Co. and others.[*]

*(Circuit Court, S. D. New York.   January 1, 1883.)*

1. CORPORATIONS—DIVIDEND ON PREFERRED STOCK—DEPENDENT ON DECLARATION OF PROFITS.

   The dividend on preferred stock may judiciously be conditioned on the declaration of profits by the board of directors of a corporation; and when such intention appears from the juxtaposition of terms, and an examination of the agreement of the shareholders, it will be sustained.

2. SAME—NATURE OF PROFITS.

   That a board of directors has determined to apply all profits made by a road to its improvement does not take away their present character. In this respect net earnings and profits are alike; and, largely at least, the improvement would be chargeable to capital.

3. SAME—RIGHT TO COMPEL DIVISION.

   The rights of preferred stockholders are not those of creditors; but still they may, under the plan of organization of a corporation, be made so far superior to those of common stockholders as to enable them to compel a division of profits, which the board of directors had determined to accumulate.

*Reversed. See 7 Sup. Ct. Rep. 209.

**4. SAME—CASE STATED.**

Owners of preferred stock entitled to an annual, non-accumulating dividend, dependent on a declaration of profits by a board of directors, which had reported more than sufficient net profits, but had determined to use all for the improvement of the road, can compel the payment of dividends therefrom. If they do not get their dividends each year, they will never get them; the expected increase in net earnings could not benefit them as long as the road could otherwise pay these non-accumulating dividends. Such property could be appropriated for the general good of all stockholders no more than any other property of these stockholders.

**5. SAME—ASSIGNMENT.**

Such rights of preferred stockholders to share in profits are mere increments of, and pass by assignment of, the stock; though this might not be true of fully-declared dividends.

In Equity.

*C. E. Tracy*, for orators.

*Wm. D. Shipman*, for defendants.

WHEELER, J. The defendant corporation appears to have been organized under the laws of the state of New York by the preferred and common stock and security-holders of the Erie Railway Company, pursuant to a plan of reorganization assented to by them, which became a part of its charter or certificate of organization under the law. Among other stock and securities of the new company provided for in the plan to be issued and delivered, there was to be, as specified in paragraph 13,—

"Preferred stock to an amount equal to the preferred stock of the Erie Railway Company now outstanding, to-wit, 85,369 shares, of the nominal amount of $100 each, entitling the holders to non-cumulative dividends at the rate of 6 per cent. per annum, in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors."

The board of directors, in "their report of the operations of the company for the fiscal year ending September 30, 1880," state that—

The gross earnings and operating expenses of the road, including all branches and leased lines, have been as follows:

EARNINGS.

| | | | | | |
|---|---|---|---|---|---|
| From general freight, | - | - | - | $11,199,498 37 | |
| "   coal, | - | - | - | - | 3,191,616 96 |
| "   passengers, | - | - | - | - | 3,682,951 18 |
| "   mails, | - | - | - | - | 163,771 38 |
| "   express, | - | - | - | - | 328,867 15 |
| "   miscellaneous, | - | - | - | | 116,403 82 |
| | | | | | $18,693,108 86 |

Amount brought forward,   -   -   -   $18,693,108 86

### OPERATING EXPENSES.

| | | |
|---|---|---|
| For conducting transportation,   -   - | $5,109,979 90 | |
| "   motive power,   -   -   - | 3,291,141 43 | |
| "   maintenance of cars,   -   -   - | 861,135 29 | |
| "   maintenance of way,   -   - | 1,938,715 41 | |
| "   general expenses,   -   -   - | 442,953 32 | |
| | | $11,643,925 35 |
| Net earnings from traffic,   -   - | | $7,049,183 51 |
| To which add earnings from other sources,   -   - | | 783,956 65 |
| Total   -   -   -   -   -   - | | $7,833,140 16 |
| From which deduct interest on funded debt, rentals of leased lines, and other charges,   -   -   -   - | | 6,042,519 45 |
| Leaving a net profit from the operations of the year of | | $1,790,620 71 |

A dividend of 6 per cent. upon the amount of preferred stock outstanding would amount to $489,403.50.   This whole amount of net profit, together with $737,119.34 received during the year from assessments on stock, was applied by the directors "to the building of double track, erection of buildings, providing additional equipment, acquiring and constructing docks at Buffalo and Jersey City, and to the addition of other improvements to the road and property."   And they "Resolved, that in the present condition of the property of the New York, Lake Erie & Western Railroad Company, its directors do not deem it wise or expedient to declare a dividend upon its preferred stock."   The orators are holders of preferred stock transferred to them since the close of the fiscal year 1880, and since the report of the directors of that year, and by their bill of complaint seek, among other things, that the net profits of that fiscal year be ascertained, and that the dividends due to the holders of preferred stock in respect thereof be directed to be paid.

There is no question made, nor any apparent room for any, but that all the rights which the orators have are the rights of stockholders as such, and not as of creditors, nor but that the holders of the preferred stock have rights under the law of the organization superior to those of the common stockholders, according to the plan of the organization.   The principal question is as to the true construction and legal effect of this plan.   Counsel, at the outset, differ as to what is the import of the language of this thirteenth paragraph. The counsel for the orators insists that the profits are what are to be

declared by the directors, and that a declaration of profits by them entitles the holders of the preferred stock to dividends from the profits so declared; while the counsel for the defendants insists that the dividends themselves are to be declared, and that until declared these stockholders cannot be entitled to any.

The sentence "as declared by the board of directors" is directly connected with the one embracing profits, and not with the one including dividends, and can only be construed as applying to the latter by outside force. It is argued that the expression is applicable to dividends, and not to profits, and that it must be understood as intended to apply to that to which it is appropriate. It is, however, not wholly inapplicable to profits. The affairs of the corporation were to be in the hands of the directors, and it might well be supposed that they would know and make known whether there were profits or not; and if any result was to be made dependent upon the existence of profits, the fact of their existence might well be referred to the declaration of the directors. This plan is an entire instrument, speaking the same language throughout, and the obvious meaning of similar expressions in other parts might throw some light upon the meaning of this. In paragraph 19 there are provisions for the payment of non-cumulative interest at "the rate of 6 per cent. per annum, or at such lesser rate for any fiscal year as the net earnings of the company for that year, as declared by the board of directors, and applicable for that purpose, shall be sufficient to satisfy." Here it is plain that the net earnings, and not the interest, are to be declared by the directors, and that the payment of the interest was to be dependent upon the declaration of the net earnings. There is nothing more incongruous about the declaration of profits than of net earnings by a board of directors of a railroad company, and it is natural to infer that the payment of dividends to preferred stockholders was intended to be made dependent, in one aspect, upon a declaration of profits by the directors, the same as a payment of interest to bondholders was upon a declaration of net earnings by the same board.

The next question is whether the directors have so declared such profits for the fiscal year 1880 as to entitle the holders of preferred stock to dividends for that year. They have expressly stated a net profit, after deducting from the earnings all expenses attending the making of the earnings, and of maintaining the property by which the earnings were made, and all fixed charges for interest and rentals,

several times larger than the whole amount of this dividend. They have, on the other hand, stated the improvements, and resolved that they do not deem it wise or expedient to declare a dividend to the preferred stockholders. There is no pretense but what the statements of the directors are all true, in fact, nor but that in what they have done they have acted in good faith.

Here is no question of separating one part of the business from the rest, as there was in *St. John* v. *Erie Ry. Co.* 10 Blatchf. 271, and 22 Wall. 136; there is here a net profit over all expenses of all the operations by which profit was made. It is wanted for judicious improvements of the property, looking to future profits. This does not take away its character as a present profit. It would be a profit, whether it should be laid out upon the property to enhance its value, or left in the treasury of the company, or divided among the stockholders. This question is somewhat like that in *Union Pacific R. Co.* v. *U. S.* 99 U. S. 402. There the question was as to net earnings. In treating this subject, Mr. Justice BRADLEY said:

"As a general proposition, net earnings are the excess of the gross earnings over the expenditures defrayed in producing them aside from and exclusive of the expenditure of capital laid out in constructing and equipping the works themselves. Theoretically the expenses chargeable to earnings include the general expenses of keeping up the organization of the company, and all expenses incurred in operating the works and keeping them in good condition and repair; while expenses chargeable to capital include those which are incurred in the original construction of the works, and in the subsequent enlargement and improvement thereof."

There is a difference in some respects between net earnings and profits, but not in this aspect. What would be net earnings would be a profit, unless there should be some liability outside the earnings to be met before there could be any profit left. Within the definition of Mr. Justice BRADLEY the improvement sought to be set over against earnings would largely, at least, be chargeable to capital, and not left to reduce profit. And the decision of this question may properly be somewhat affected by the nature of the dividend to which it is sought to have the profits applied, as appears by some of the reasoning in that case. Stress was there laid upon the fact that the government would be merely put off in receiving, but not defeated as to, its share of the net earnings by a liberal allowance in their expenditure upon the property. Here these dividends are non-cumulative, and if the holders of this stock do not get these dividends in each particular year they never can have them. The improvement of the property by the expenditure of the money belonging to them goes to the bene-

fit of the other owners, and not to them, so long as it would pay the dividends on the preferred stock without the expenditure.

This property for the year in question was able, as it was, to pay the preferred dividends; the improvements were made for the purpose of increasing the dividends, but they would not increase these stockholders' dividends. When it comes to the question of using the profits which would go to one set of stockholders for the benefit of another set, a more rigid rule should be applied. The question becomes more one of right, to be determined by the law, than one of policy, to be determined by the discretion of the directors. Here were profits in fact; the preferred stockholders had rights dependent upon this fact. These rights could not lawfully be passed by for the benefit of other interests, however intimately connected, any more than any other property of the preferred stockholders could be appropriated to the same purpose, on the ground that such appropriation of it would be for the best good of the whole.

These rights are the rights of stockholders, and not of creditors; and it is said that stockholders are not entitled to receive dividends until they have been in some manner declared. This is, doubtless, in general true. It grows out of the contract by which stockholders become such. Each stockholder in effect agrees to be bound by the corporate action within the scope of the corporate powers; but there may be other agreements limiting what shall be done in special cases. A corporation may doubtless accumulate its profits instead of dividing them, and a common stockholder would be bound by the determination to do so, however much he might prefer to have his share of them divided out to him. But here was another agreement among the shareholders, made a part of the frame-work of the corporation, that when there were annual profits shown by the official declaration of the directors, they should, to the extent of 6 per cent. on their stock, be divided among these stockholders.

This agreement was warranted by the law of the state, and, as imbedded in the charter, is as binding as any involved in the enterprise. It applies to this first accumulation of profits with the same force that the others do to the rest of the profits. It was not made with the corporation, but was made between the shareholders in prospect before there was a perfected corporation; therefore the corporation cannot be sued for a breach of it; but it attaches to and affects the profits as they come to the hands of the corporation. This amount of annual profits is received by it in trust for the preferred stockholders, the same as the general profits are for the body of the

stockholders. No declaration of a dividend was necessary to complete the equitable right of these stockholders to this amount. *Boardman* v. *Lake Shore & Mich. R. Co.* 84 N. Y. 157; *Richardson* v. *Vermont & Mass. R. Co.* 44 Vt. 613; *Dent* v. *London Tramways Co.* L. R. 16 Ch. Div. 353. None of the cases cited for the defendants appear to be contrary to this. In most or all of them the profits applicable to the preferred stock or superior right did not exist in fact; and the right to the profits, if they should exist, was recognized.

It is further suggested that if these profits were so situated that any one became entitled to share in them on account of the preferred stock, that right would attach to the holders at that time, and would not pass to the orators by a mere transfer of the stock afterwards. Fully-declared dividends might not so pass. But here was no declaration of a dividend upon this stock separating the share of the profits from the other assets belonging to the stock. The right to share in these profits remained as a mere increment of the stock, and would pass as an incident to it. *Boardman* v. *L. S. & M. S. R. Co.* 84 N. Y. 157.

Upon the whole case, the orators appear to be entitled to a decree according to the prayer of the bill.

Let there be a decree for the orators according to the prayer of the bill, with costs.