## MARKS v. MONROE COUNTY PERMANENT SAVINGS & LOAN ASS'N.

(Supreme Court, Special Term, Monroe County. March 6, 1889.)

1. SAVINGS AND LOAN ASSOCIATION — DECLARING DIVIDENDS — DISCRETION OF DIRECTORS.
   2 Rev. St. (7th Ed.) p. 1763, § 7, makes it the duty of the directors of a savings and loan association to declare dividends. The constitution of such association provides that a dividend of the net profits shall be declared at each quarterly meeting, to be credited to each shareholder in a manner therein provided. *Held* that, though such provision of the constitution be mandatory, the amount of the dividend to be declared is discretionary with such directors, and the dividend declared at the quarterly meeting held at the end of the third quarter may include only the net profits of the second quarter.

2. SAME.
   Such dividend need not be of the whole of the net profits of the corporation during the quarter included; especially when it does not appear that the debts to become due or the business of the association do not require the detention of money.

3. SAME—EARNINGS—WHAT CONSTITUTE.
   In an action by a stockholder to compel a savings and loan association to increase a dividend, it appeared that the manner of conducting the business of the association was that when there was money in its treasury to loan, if more than one member applied for it, the loan was put up at auction to the highest bidder. Each member was entitled to borrow not more than the par value of his stock, by giving a bond and mortgage for such par value; but he would receive only such amount, less the premium bid. The loan is paid in weekly installments of 10 cents principal and 10 cents interest on each share represented by the loan. *Held*, that the profits on loans made during any quarter, represented by the premiums bid thereon, are not earned until such transactions are closed by payment of the loans, and the money is in the treasury, and they are not within the meaning of 2 Rev. St. (7th Ed.) p. 1763, § 7, providing that the directors shall declare dividends from the earnings.

Action by William E. Marks against the Monroe County Permanent Savings & Loan Association to compel defendant associa-

tion, in which plaintiff is a stockholder, to increase a dividend. Judgment for defendant.

John F. Kinney, for plaintiff.

J. E. Durand, for defendant.

RUMSEY, J. The defendant is a corporation organized under the authority of chapter 122 of the Laws of 1851. The plaintiff is a stockholder in the corporation, and at the time when the matters accrued which are alleged as the cause of action herein he had 50 shares in the stock of the defendant upon which he had paid $1,845.25, upon which sum he was entitled to dividends. The quarterly meetings of the corporation are held on the third Saturdays of November, February, May, and August, respectively. Article 15 of the constitution of the defendant requires that a dividend of the net profits shall be declared at each quarterly meeting, to be credited to each shareholder in a way and upon an amount to be ascertained as provided in that article, but which need not be referred to here. The statute (2 Rev. St. [7th Ed.] p. 1763, § 7) makes it the duty of the directors to declare the dividends. At the quarterly meeting in August, 1888, the directors resolved to and did declare a dividend of 4 per cent. upon the amount which each shareholder then had to his credit in the association. The amount of the dividend upon the plaintiff's credits was $73.81, and the total dividend upon all the shares was $1,146. It was reckoned on the earnings, or what was claimed to be the earnings or net profits, of the second quarter, and did not include the earnings or profits of the third quarter, although declared the end of that quarter.

The plaintiff claims that the dividend declared at the third quarterly meeting should have included the net profits of the third, as well as of the second, quarter, and that it should have been over 9 per cent., instead of 4 per cent. The power to declare dividends is by the statute given to the trustees of the corporation. 2 Rev. St. (7th Ed.) p. 1763, § 7. Usually the exercise of this power is largely, if not entirely, in the discretion of the directors. Karnes v. Railroad Co., 4 Abb. Pr. (N. S.) 107; Boardman v. Railroad Co., 84 N. Y. 157, 180; Williams v. Telegraph Co., 93 N. Y. 162, 192. In the cases of these societies the discretion is expressly vested in the trustees by the statute. It is said, however, that the article of the constitution above referred to makes it obligatory upon the trustees to declare a dividend at each quarterly meeting. A good deal may be said on the other side of that proposition, but for the purpose of this case the truth of it may be admitted. The discretion of the trustees is then limited by article 15, and they are required to declare from the net profits a dividend at each quarterly meeting. But this article or by-law does not further limit the discretion which the law vests in the directors. The article does not say that the dividend must include the profits of the quarter immediately preceding the meetings at which it is declared. Indeed, the latter part of it contains provisions from which it is necessarily to be inferred that the right of a depositor to a dividend upon the profits of any quarter cannot be ascertained until the expira-

tion of the next quarter.  The amount of his credits for purposes of dividends is to be ascertained by taking the gross credits at the beginning of a quarter, deducting his withdrawals during the quarter, and using the remainder as the basis of estimate.  It is apparent that this system ignores entirely any deposits made during the three months next preceding that meeting at which the dividend is declared.  The result is that the money deposited during those months does not share in the dividend declared at the end of them.  But that money has added to the earnings of the quarter during which it was deposited, and it ought to share in the dividends of that quarter.  The theory of the by-law evidently is that all who are depositors at the end of each quarter are entitled to share in the dividend for that quarter; but that, while his right to a dividend is fixed at the end of the quarter, the amount of his deposit, on which the dividend is to be computed, shall not be ascertained until the beginning of the next quarter.  In this way, while one may become a depositor, and entitled to a dividend, by depositing on the day before the quarterly meeting, yet the dividend is only computed on the amount of deposit, of which the corporation have had three months' use; for, if he withdraws his deposit during the quarter before the dividend is declared, he does not share in it.  In this way it is secured that the deposits of each quarter share the earnings of that quarter.  If the method insisted on by the plaintiff were adopted, it would happen that the earnings of any particular quarter, however large, would not belong to the members for that quarter whose deposits made the earnings, but to the members for the previous quarter.  It appears, too, that the business of any particular quarter is frequently unfinished at the end of it.  Loans bid for and assigned to members during the quarter are frequently not perfected until some time afterwards; so that it is not easy to say at the end of each quarter just what has been the result of its business, so that a dividend can be declared.  For these reasons I think that the directors have a discretion, which the article in question does not limit, to declare their dividend, not on the earnings of the quarter in which it is declared, but on those of the previous quarter.  I do not mean to say that the trustees are not at liberty, when they declare a dividend, to consider the total earnings or profits, but only that they are not by law compelled to do so, and that there are reasons in this case why they should not do it.

The next claim of the plaintiff is that the dividend should be of the whole of the net earnings or profits of the corporation, and be at a greater rate than 4 per cent. on the deposits entitled to it.  In regard to this claim it may be said, first, that although there may be profits properly applicable to a dividend, yet usually when it shall be made, and, if made, how much it shall be, rests in the fair and honest discretion of the directors, uncontrollable by the courts.  Williams v. Telegraph Co., 93 N. Y. 162, 192, and cases cited.  In this case the directors are bound by the by-laws or articles of association to declare a dividend of the profits, but I do not think that requires them to use all the profits earned at any time.  There may be debts

of the association not due, but to become due, or the business of the association may require the retention of money for some other purpose. In such case it is clearly within the power of the directors to retain such money as may be necessary, and the court will not interfere with that discretion. It does not appear here what is the state of affairs in that regard, and for that reason the court cannot say that the directors erred in refusing to declare a dividend greater than 4 per cent.

But, passing that, let us see whether there was on the 18th of August any fund out of which the directors might have declared a larger dividend. The statute says that they may declare dividends from the earnings, and from the earnings only. 2 Rev. St. (7th Ed.) p. 1763, § 7. This cannot mean, of course, that the directors are at liberty to devote all the earnings to dividends, without providing for the debts of the company or the expenses of its maintenance. It must be construed to mean that the dividends may be declared out of the profits, which means out of the surplus of the earnings which may be left after paying the expenses of carrying on the business and all other current expenses. St. John v. Railway Co., 10 Blatchf. 271, 22 Wall. 136, 99 Amer. Dec. note p. 762. That is the general statutory rule of this state with regard to corporations, and the one which I think should be applied here. 2 Rev. St. (7th Ed.) p. 1533. § 2; Van Dyck v. McQuade, 86 N. Y. 38, 46, 47. The plaintiff claims that in computing the amount of this surplus the sum bid for premiums on each loan during the quarter should be estimated as earnings. This the defendant denies, and the question thus raised is the serious one on this branch of the case. To decide it, we must examine the way in which loans are made. It is this: When the money to loan is in the treasury, if more than one member applies for it, the loan is put up at auction, and the member offering the highest premium for it is entitled to have it awarded to him. Each member is entitled to borrow not more than the par value of the stock for which he has subscribed, if he gives satisfactory security. When a loan to the amount of his stock is awarded to him, he gives to the association his bond and mortgage for the par value of the stock, and he receives for it, not the face of the bond, but that amount less the premium. For instance, if a member has five shares, the par value of which is $525, and bids $6 per share premium for a loan of that amount, he gives to the association his bond and mortgage for $525 and interest, and he receives from it the face of his bond, less the premium, which is $30; the transaction netting him $495. This he pays in weekly installments of 10 cents principal and 10 cents interest on each share represented by the loan, or, in the case used for illustration, $1 a week, until the payments and his dividends equal the amount of the bond and interest. It will thus be seen that the premium on each loan is not paid in cash, but goes into the bond and mortgage, and becomes a debt due to the association, payable at the rate of 10 cents a week for each share represented by it. The precise time when it will all be paid is not certain. It depends upon the amount chargeable to the member for insurance and taxes on the mortgaged property, and for fines and

penalties imposed on him, as well as upon the dividend he shall become entitled to.   Indeed, it may not be paid at all, but the member may default in his payments, leaving the association to repay itself by a foreclosure of the mortgage.

The transaction above set forth adds to the property of the association; that is, the association has for $495 become the owner of a bond and mortgage worth $525, upon which it will eventually realize that sum, with interest.   But, while its assets are increased by the sum of $30, it has not received that amount of money.   It is probable that the amount will be received, but it may not.   This mortgage for $525 has become an asset of the company, and when it is paid the company will have made a profit by the transaction of $30 and interest.   But I do not think that the profit can be said to be earned until the transaction is closed and the money is in the treasury.   Until that is done, there may be no profit.   The failure to pay may make the asset worthless.   This distinction between the gain by the appreciation in value of an asset, and the final gain of money in hand by its sale at the enhanced value, is taken and made the rule of the decision in Jennery v. Olmstead, 36 Hun, 536.   In that case it appeared that the defendant, Olmstead, had been president of a savings bank under an agreement that he should have a salary out of the net profits.   He credited himself with certain sums, and an action was begun to recover them back.   It appeared that in 1869 the bank bought certain bonds, which appreciated in value to the amount of $648.43, but which had not been sold.   Olmstead claimed that this enhanced value was a profit, which entitled him to receive that sum as a salary.   The court held not, saying that to estimate the value of bonds yet unsold, and, on finding the estimated value to exceed the purchase price, to call the difference profits, was not the way to ascertain the fact of profits, and that such appreciation was not profits in any sense of the term.   I think the holding of the court in that case, that profits are not realized because the value of the assets is enhanced, is controlling here against the plaintiff. It is to be noticed that while the by-law of the corporation uses the word "profits," the statute says that dividends can be declared only from the earnings.   The profits out of which the trustees may declare their dividend must be the profits out of the earnings.   The earnings are the receipts, the sum which the association received, or became entitled to receive, during the quarter; not those which it might receive at some future time, but which it has now no right to demand.   The conclusion here reached is sustained by many cases, in which the terms "profits" and "earnings" have been defined, some of which are cited above.   Boone, Corp. § 125; Mor. Priv. Corp. § 437; Connolly v. Davidson, 15 Minn. 519, (Gil. 428.)   That conclusion requires that in estimating the net profits of any quarter the amount of premiums which have been bid for loans during the quarter, and included in mortgages, but not yet paid in cash, is not to be estimated.

That conclusion puts an end to this case, for it is evident that, without estimating these premiums, the earnings of the association were not more than the dividend declared by them.   Indeed, the

profits of the association for the second and third quarters were not as much as the dividend. The cause of action of the plaintiff fails when that fact appears. There is no question here whether the directors may not, in declaring a dividend, discount future earnings which are reasonably certain to be received, and no opinion is expressed upon that subject. There is in the complaint an allegation of fraudulent practices of the trustees, but no proof was given upon it, and nothing of the kind appears or was charged upon the trial.