Shauck, J.
In seeking the intention of the parties the provisions of the bond and of the mortgage are to be considered together, not only because they are contemporaneous instruments between the same parties touching the same subject matter, but because each instrument in terms refers to the other.
The trustee is not a necessary or proper party here, because no relief is sought against him. Although, in view of the defaults complained of, he might proceed to exercise the powers conferred upon him by the deed, that does not exclude the right of the plaintiffs to sue upon the covenants of the company with the holders of its bonds for the purpose of subjecting any fund which, by agreement, has been devoted to the fulfillment of such covenant obligations.
If the plaintiff, and those for whom they sue, are entitled to interest for the two years referred to, they have instituted a proper suit for the enforcement of that right; not only because it is peculiarly the duty- of courts of equity to compel the proper application of trust funds, but because the relief sought is provided for., in the contract. Boardman et al. v. Lake Shore & Michigan S. Ry. Co., 84 N. Y. 157.
The fact that “ repairs, renewals and betterments ” of the road were made in the years 1882 and 1883, and paid for out of the earnings of those years instead of the $50,000.00 of surplus remaining from previous years after payment of interest on income bonds, does not warrant a decree for the plaintiffs. It was in plain pursuance of the contract that the sum of $50,000.00 was passed into the sinking fund and used in the *477 redemption of bonds. The undertaking of the company was to pay interest on these bonds only out of surplus earnings after all operating expenses and repairs were paid. That renewals and betterments were made does not compel the conclusion that the company used the income of those years for a purpose not contemnlated in the contract. If that conclusion were necessary the record does not show what amount of money was used for purposes beyond mere repairs.
The inevitable and controlling question is: Did interest accumulate upon the bonds during the years 1882 and 1888, and become a charge against the subsequent surplus earnings of the road? Counsel for the plaintiffs below concede that they could not resort to prior surplus earnings, and the concession is required by the unequivocal language employed by the parties to indicate the intention that semi-annually all earnings remaining after payment of interest should pass into the sinking fund and be used in the redemption of bonds. In this regard the parties agreed: “ That a sinking fund shall be established by said party of the first part, into which shall be paid, semi-annually, any and all net earnings of said company, after payment of the interest upon the said first mortgage bonds and said income bonds.” While this language forbids the inference that any earnings were to be withheld from the sinking fund to pay interest that might subsequently accrue, it does not' provide that any earnings shall be passed into that fund until payment has been made of all previously accruing interest. This seems to answer the argument of the company’s counsel, that earnings made after a default in interest are upon the same footing as those made before such default.
Nor does a conclusion favorable to the company result from giving its full distributive effect to the word “each” in the phrase “such interest on this bond for each six months;” for it refers only to the interest for the period, and not to the income. There is no provision in either the bond or the deed which limits- the interest of a semi-annual period to the income of the same period; nor does any of the language employed indicate the intention that interest on the bonds should not accumulate.
*478 It seems to us that the contrary intention is inferable from the purposes which the parties had in view, and implied in the stipulations of the instruments. The purpose was to secure money for the use of the company by a pledge of its income. The deed in terms shows that the parties understood this to be a “ pledge of all the net income of said company * * to an amount equal to six per cent, per annum upon said income bonds, payable semi-annually.” Unless the natural scope of this provision is limited by other portions of the deed or bond, it devotes the entire net income of the company to the payment'Of interest on these bonds, but not exceeding the rate fixed. It is not limited by any provision of either instrument except the clause relating to the sinking fund. Full effect, as we have seen, is given to that clause by the conclusion that a bondholder cannot resort to previous surplus for the payment of interest.
The entire future income is pledged to secure interest on the bonds “to an amount equal to six per cent, per annum.” The use of these words seems quite at variance with the view that in the minds of the parties each semi-annual period was segregated. If income realized in one period was in no event to be applied to interest accruing in another there would have been no need to provide for equalizing interest.
We conclude that in the instrument before us the parties have agreed that interest shall accumulate; and that no earnings are to be passed into the sinking fund for the redemption of bonds until all arrears of interest on the income bonds have been paid.
But if the intention that interest shall accumulate is not expressed by the parties, that result will follow by inference, there being no stipulation to the contrary. As to the question of accumulation there seems to be no difference between contracts to pay interest out of income, and to pay dividends to preferred shareholders. Whether the transaction assumes one form or the other, the result is that the company raises funds by pledging its income. Indeed, “ interest” and “ preference dividend” are sometimes used as equivalent terms. In the language of Lord Cranworth in Henry v. The Great N. Ry. Co., a preferred dividend “ is substantially interest chargeable ex *479 clusively on profits.” In such cases, unless there is a stipulation to the contrary, courts will infer the intention that the dividends or interest shall accumulate. The inference is quite consistent with the purposes of the parties to a transaction in which the company gets the use of money, and it responds to a consideration of policy which forbids placing the interest of the directors in conflict with the duties which they owe to shareholders and creditors. These views are sustained by numerous authorities, among which are Burt et al. v. Rattle et al., 31 Ohio St. 116; Jones on Railroad Securities, sec. 620; Henry v. The Great Northern Ry. Co., 1 De G. & Jones, 606; West Chester & Philadelphia Ry. Co. v. Gray's Executrix, 77 Pa. St. 321, and Boardman et al. v. Lake Shore & Mich. South. Ry. Co., 84 N. Y. 157.
H. H. Poppleton and R. D. Marshall, for plaintiffs in error.
John W. Warrington, Q. B. Matthews, and George O. Warrington, contra.
The contrary opinion found in a note on page 147 of Green’s Brice’s Ultra Vires is not sustained by any of the cases cited by the editor. Such of them as are relevant hold only that the accumulation will not be inferred against the expressed intention of the parties.
The judgment is consistent with these views, and it will be affirmed.